829 F.2d 1370
 126 L.R.R.M. (BNA) 2601, 9 Fed.R.Serv.3d 113,
41 Ed. Law Rep. 1229
 Ernest SMITH; Sam Eliowitz; Albert Rosen; Robert Sheldon;
Jan Sklenar; Joseph Soltesz; Cecelia Stoll;
and Harry Weber, Plaintiffs-Appellees,
v.
DETROIT FEDERATION OF TEACHERS, LOCAL 231, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO; Detroit Board of
Education, Defendants-Appellants.
 No. 85-1742.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 13, 1987.
Decided Sept. 29, 1987.
 
 Eileen Nowikowski, Theodore Sachs (argued), Sachs, Nunn, Kates, Kadushin, O'Hare, Heleston & Waldman, P.C., Detroit, Mich., for defendants-appellants.
 Michael E. Avakian (argued), Ctr. on Nat. Labor Policy, Inc., North Springfield, Va., Robert W. Morgan, Chirco, Herrington, Runstadler & Thomas, Troy, Mich., for plaintiffs-appellees.
 Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Defendant-appellant Detroit Federation of Teachers, Local 231, American Federation of Teachers, AFL-CIO ("DFT" or "the Union") appeals that portion of a district court's order which rejected a magistrate's recommendation that DFT be awarded attorney's fees following the plaintiffs-appellees' (collectively "Smith") unsuccessful civil rights suit against the Union. DFT argues on appeal that the frivolous and harassing nature of Smith's suit and attendant unsuccessful appeal to this court warranted the imposition of attorney's fees against both Smith and plaintiffs' counsel pursuant to the inherent power of the court, 42 U.S.C. Sec. 1988 (1982), 28 U.S.C. Sec. 1927 (1982), and Fed.R.Civ.P. 11. We hold that by failing to object to the magistrate's recommendation that the individual plaintiffs not be held responsible for attorney's fees, DFT waived the right to now contend that Smith be held liable for the payment of attorney's fees to DFT. We also hold that the district court did not abuse its discretion in declining to assess Smith's counsel for DFT's attorney's fees. Accordingly, we affirm.
 
 I.
 
 2
 The facts underlying the instant appeal are not in dispute. Despite a Michigan state law prohibiting public employee strikes, DFT instituted a teachers' strike in the Detroit Public School System in September, 1979. As a result of the strike, the start of the school year was delayed by thirteen days, which were made up by extending the end of the school year. Subsequently, on November 12, 1980, eight individuals, all nonunion tenured teachers, filed suit in federal court against the Detroit Board of Education ("Board") and DFT. Although the teachers had lost no wages or benefits as a result of the strike, Smith's complaint alleged that the Board's closing of the schools and subsequent denial of unemployment compensation resulted in a deprivation of their right to employment, and monetary loss by virtue of not being able to perform other employment during the period of the strike, all without due process. To this section 1983 action against the Board, Smith appended a state law tort claim against DFT, alleging that DFT had intentionally caused them to lose their employment until the strike was settled to DFT's satisfaction, resulting in injury to their personal and professional activities.
 
 
 3
 DFT filed a motion to dismiss or for summary judgment on February 9, 1981, alleging that Smith had failed to state a claim upon which relief could be granted and that the district court lacked jurisdiction to hear Smith's case. Smith then filed a motion with the court for leave to amend the complaint to substitute a section 1983 claim against the Union for the state tort claim. Oral argument was heard before the district court on March 13, 1981. DFT contended that the Michigan Public Employment Relations Act governs public sector labor relations and vests exclusive authority with the Michigan Employment Relations Commission to adjudicate claims arising out of labor disputes, and thereby precluded Smith's pendent state claim against the Union. In addition, DFT argued against permitting Smith to amend the complaint to assert a section 1983 action against DFT, on the ground that DFT, a private organization, was not engaged in any "state action," a necessary element for any section 1983 claim. The district court agreed with DFT in a bench opinion entered following the hearing. The court formalized its holding in an order denying Smith's motion to amend its complaint because the proposed amendment would be "futile," and granting DFT's motion to dismiss the complaint and for summary judgment. Following the district court's grant of summary judgment to the Board on June 1, 1982, final judgment was entered dismissing Smith's case on June 15, 1982, but assessing no costs. Smith then appealed to this court.
 
 
 4
 In an unpublished decision, we affirmed the district court in its entirety on August 30, 1983. DFT then moved the panel for double costs of appeal pursuant to Fed.R.App.P. 38, and the award of attorney's fees as the "prevailing party" in a civil rights suit, pursuant to 42 U.S.C. Sec. 1988 (1982). This court referred DFT to the district court as the proper forum in which to apply for attorney's fees, and its request for double costs, based on DFT's assertion that Smith had brought a frivolous appeal, was denied as "unwarranted." Smith v. Detroit Board of Education, 728 F.2d 359 (6th Cir.1984) (per curiam).
 
 
 5
 DFT's subsequent motion for attorney's fees in the district court was referred to a magistrate for a report and recommendation. The magistrate recommended that DFT was entitled to attorney's fees under section 1988, under 28 U.S.C. Sec. 1927, under Fed.R.Civ.P. 11, and pursuant to the court's inherent power to assess costs against a party for bad faith litigation. The magistrate also recommended, however, that only Smith's counsel, and not the individual plaintiffs, be assessed for attorney's fees. Finally, the magistrate reduced DFT's total claim of over $30,000 down to $15,740 in attorney's fees and $330 in costs. Upon review of the report, the district court disagreed with the magistrate's recommendation and rejected any award of attorney's fees to DFT, adopting only that portion of the report which assessed costs to Smith. This appeal ensued.
 
 II.
 
 6
 Before addressing the merits, we must delineate the proper scope of this appeal. DFT argues for an attorney's fee assessment against the individual plaintiffs under the court's inherent power, section 1988, and Rule 11, and that Smith's counsel be held liable for the fees pursuant to the court's inherent power, section 1927, and Rule 11. Smith, on the other hand, asserts that the magistrate recommended that only Smith's counsel be held responsible for DFT's attorney's fees, and only pursuant to the court's inherent powers to assess an attorney for bad faith litigation and 28 U.S.C. Sec. 1927. Thus, according to Smith, when DFT failed to object to either the magistrate's delimitation of the parties potentially liable for the fees, or the magistrate's failure to invoke Fed.R.Civ.P. 11 as a basis for an assessment against Smith's counsel, DFT failed to preserve for appeal any objection to these matters.
 
 
 7
 DFT's motion for attorney's fees was referred to a magistrate pursuant to 28 U.S.C. Sec. 636(b)(1)(B) (1982) for a report and recommendation. By operation of section 636(b)(1), any party that disagrees with the magistrate's recommendation "may serve and file written objections" to the magistrate's report, and thereby obtain de novo review by the district court judge of those portions of the report to which objections are made. 28 U.S.C. Sec. 636(b)(1) (1982). In the interest of judicial economy, this circuit established in United States v. Walters, 638 F.2d 947, 949-50 (6th Cir.1981), that a party must file timely objections with the district court to avoid waiving appellate review. See also Thomas v. Arn, 728 F.2d 813 (6th Cir.1984), aff'd, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Patterson v. Mintzes, 717 F.2d 284, 286 (6th Cir.1983). By operation of this supervisory rule, only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir.1986); Wilson v. McMacken, 786 F.2d 216, 220 (6th Cir.1986).
 
 
 8
 Determining whether DFT complied with this supervisory rule, or whether the issue of the individual plaintiffs' responsibility for the fees was otherwise preserved for our review, is made difficult because neither the magistrate's report nor the district court's memorandum are models of clarity. The magistrate first determined that the prevailing defendants were entitled to attorney's fees pursuant to 42 U.S.C. Sec. 1988, the court's inherent powers, and Fed.R.Civ.P. 11, then recommended that the individual plaintiffs not be held liable for the fees, and finally concluded that Smith's counsel should bear responsibility for the fees under the court's inherent powers and 28 U.S.C. Sec. 1927. Although the magistrate only expressly enunciated two bases for assessing the fees against Smith's counsel, it appears to us that he also desired to shift the plaintiffs' responsibility to their attorney and assess Smith's counsel under 42 U.S.C. Sec. 1988 and Fed.R.Civ.P. 11. As for the district court's memorandum, it left unclear whether it was precisely determining that the individual plaintiffs were not being held liable under section 1988, the inherent powers, or Rule 11, or merely expressing a general disagreement with the magistrate over whether DFT was entitled to fees, from any source, under these provisions.
 
 
 9
 What is clear to us is that the magistrate intended that Smith's counsel only, and not the individual plaintiffs, be held responsible for the payment of DFT's attorney's fees. Despite the fact that this recommendation limited the sources for the recovery of any attorney's fees DFT may have ultimately been awarded, DFT failed to object to this aspect of the magistrate's report, although it did object to the magistrate's halving of the amount of fees requested. Since no objection was taken to the magistrate's recommendation that only counsel be assessed, the question of whether the individual plaintiffs should have been held liable, under any of the alternative ways of doing so, was not properly preserved for appellate review.[1] As a result, even if the district court had agreed with the magistrate that DFT was technically entitled to attorney's fees, it would have been free, due to the absence of any objection from DFT, to adopt the magistrate's recommendation that the plaintiffs not be assessed. Consequently, we believe that the question of whether the plaintiffs should bear responsibility for the fees was an issue distinct from the question of whether DFT was entitled to fees from Smith. As we interpret the district court's memorandum, this distinct determination was foreclosed by the district court's finding that DFT was not entitled to fees. In our view, therefore, the fact that the district court addressed the propriety of assessing fees under section 1988, the inherent powers, and Rule 11 does not suffice to preserve for our review the issue of the individual plaintiffs' responsibility. Instead, by failing to object to the magistrate's recommendation that the individual plaintiffs not be held responsible for the fees, DFT acquiesced in that recommendation and waived subsequent review of the matter.[2]
 
 
 10
 On the other hand, we disagree with Smith's contention that DFT's failure to object to the magistrate's recommendation that counsel be assessed only under the court's inherent powers and section 1927 similarly precludes DFT's assertion on appeal that attorney's fees should be assessed against counsel under Rule 11. This argument is premised on the notion that the magistrate, in fact, recommended that Smith's counsel be assessed fees under only two aegises. It is clear to us, however, that despite the magistrate's lack of organizational acumen, he desired to charge fees against Smith's counsel under whatever authority was available for this purpose, including Rule 11. Consequently, no objection from DFT was required to preserve this issue, and we find that the issue of whether Smith's attorney should be subjected to paying DFT's attorney's fees under Rule 11 is properly before us. Moreover, although the Rule 11 issue was not addressed by the district court within the precise context of assessing fees against Smith's counsel, the matter has been fully briefed to this court, and will be considered in the interest of judicial economy. Accordingly, we will now proceed to address only the propriety of an assessment of attorney's fees against Smith's counsel, but under all the avenues available to accomplish this result--the inherent power of the court to assess fees for bad faith litigation, 28 U.S.C. Sec. 1927 (1982), and Fed.R.Civ.P. 11.
 
 III.
 
 11
 "Although the 'American Rule' has been and remains that parties to litigation must bear their own attorney's fees, federal courts recognize several exceptions to this general rule." Jones v. Continental Corp., 789 F.2d 1225, 1228-29 (6th Cir.1986). One of these exceptions is the power of a district court, under the court's "inherent powers," to assess attorney's fees against losing counsel upon a finding that the attorney "willfully abuse[d] judicial processes" by conduct "tantamount to bad faith." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct. 2455, 2463-65, 65 L.Ed.2d 488 (1980); Jones, 789 F.2d at 1229. Under this bad faith exception, it must be established that the attorney was guilty of conduct, by instituting or in maintaining an action, motivated by subjective bad faith. See Jones, 789 F.2d at 1230. Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment. See McCandless v. Great Atlantic & Pacific Tea Co., 697 F.2d 198, 201 (7th Cir.1983).
 
 
 12
 In the instant case, the magistrate found bad faith because the claims against DFT in the complaint and proposed amended complaint were clearly precluded by established judicial precedent, and because the suit by Smith was motivated by anti-union animus. The district court disagreed, finding that the precedents did not so clearly bar Smith's action that the bringing and maintaining of the suit constituted bad faith litigation, and finding no evidence of harassing litigious conduct on the part of Smith's counsel that would warrant the assessment of attorney's fees. Since "[a]n award of attorney's fees ... under the court's 'inherent powers' rests in the sound discretion of the trial court," Jones, 789 F.2d at 1229, we may not reverse the district court's declination to assess fees without finding that the lower court abused its discretion. See Wrenn v. Gould, 808 F.2d 493, 504 (6th Cir.1987); see also Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) ("the American commonlaw rule allows the award of attorney's fees in ... exceptional circumstances.") (emphasis added); Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622-23, 44 L.Ed.2d 141 (1975) ("a court may assess attorney's fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' ") (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)) (emphasis added); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986), cert. denied, --- U.S. ----, ----, 107 S.Ct. 1373-74, 94 L.Ed.2d 689 (1987). Since, in our view, the magistrate erred in determining that Smith's suit was barred by clearly established judicial precedents, and furnished an insufficient basis for concluding that the action against DFT was motivated by an improper purpose, we are unable to find that the district court abused its discretion in refusing to adopt the recommendation for the imposition of attorney's fees.
 
 
 13
 First, we find that the magistrate erred in concluding that the pendent state tort claim that was asserted against DFT in the original complaint was so clearly precluded by Lamphere Schools v. Lamphere Federation of Teachers, 252 N.W.2d 818, 400 Mich. 104 (1977), that Smith's counsel was guilty of bad faith litigation. Lamphere established that the Public Employment Relations Act ("PERA") provides an exclusive statutory remedy available to a school board against striking teachers and their union, and that exclusive jurisdiction rests in the Michigan Employment Relations Commission ("MERC") to adjudicate unfair labor practice charges arising under the PERA. Accordingly, the Lamphere court held that a school board was unable to maintain a common law tort action against a teachers' union for damages arising from an illegal strike. Contrary to the magistrate's confidence that Lamphere precluded all common law actions by any party for damages arising out of illegal public employee strikes, however, it seems to us at least arguable that the plaintiffs in the instant case, as nonunion members allegedly adversely affected by the strike, stood in a different relationship to the union than did the school board in Lamphere. Interestingly, DFT appears to have recognized that Smith's position relative to the union and the strike was different from that which existed in Lamphere, when it characterized the plaintiffs as "third parties only tangentially if at all related to the labor dispute" and argued to the district court that the plaintiffs lacked standing to sue the Union for damages arising from the teachers' strike. Also significant is the fact that when the district court granted DFT's motions to dismiss and for summary judgment, it did so by concluding that the public policy enunciated in Lamphere applied to bar Smith's action, despite the "arguably closer relationship of these parties to the situation than the parties in Lamphere." Thus, although Lamphere firmly established the exclusivity of the PERA and MERC over unfair labor actions arising between a teachers' union and a school board, we do not believe that the state court decision so clearly precluded Smith's tort claim that Smith's counsel's filing of such a claim was an act of bad faith litigious conduct.
 
 
 14
 Next, we find that the magistrate similarly erred in concluding that Smith's attempt to amend the complaint to allege a section 1983 violation by DFT was clearly precluded by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), because adequate state remedies existed which afforded Smith relief for any alleged injuries. Parratt stood only for the proposition that section 1983 provides no remedy against a state defendant who negligently deprives a plaintiff of personal property through a random and unauthorized act, if there is an adequate remedy at state law which may redress the wrong. See id. 474 U.S. at 540-44, 101 S.Ct. at 1915-17. It was not until Vicory v. Walton, 721 F.2d 1062, 1063-65 (6th Cir.1983), cert. denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), followed by Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), after Smith's action in the district court and on appeal was over, that the rationale of Parratt was expressly extended to preclude section 1983 actions asserting intentional deprivations of property. In fact, at the time the Supreme Court decided Hudson, although five circuits had held that Parratt extended to intentional deprivations of property, three circuits had held that it did not. See Hudson, 468 U.S. at 531 n. 10, 104 S.Ct. at 3202 n. 10. Smith's proposed amendment of the complaint, however, clearly attempted to assert a section 1983 claim against the Union for the intentional deprivation of property rights. Consequently, it cannot be said that Smith's counsel was guilty of attempting to bring a section 1983 action against DFT in bad faith because he did not prognosticate that the rationale of Parratt would bar the suit.
 
 
 15
 Alternatively, the magistrate concluded that it should have been evident to Smith's counsel, at the time he attempted to amend the complaint to assert a section 1983 claim against DFT, or at least while Smith's appeal was pending, that the Union was not a "state actor" for purposes of the federal civil rights statute. The magistrate found that Supreme Court precedents such as Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173-77, 92 S.Ct. 1965, 1971-73, 32 L.Ed.2d 627 (1972) (a private organization that discriminates is not engaged of "state action" merely because it receives some benefit from the state or is subject to some state regulation), and Flagg Brothers Inc. v. Brooks, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978) (state acquiescence in private party's action does not turn private conduct into state action), clearly demonstrated the frivolous nature of Smith's assertion that DFT was engaged in state action for purposes of section 1983. In addition, the magistrate found that a trilogy of Supreme Court cases decided in 1982, while Smith's appeal was pending, should have convinced Smith's counsel of the lack of merit in his position. See Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982) (private nursing home subject to state regulation not engaged in state action); Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982) (private misuse of state prejudgment attachment statute not state action); Rendell-Baker v. Kohn, 457 U.S. 830, 840-42, 102 S.Ct. 2764, 2770-71, 73 L.Ed.2d 418 (1982) (nonprofit, privately operated school for handicapped students not state actor because regulated by state and receives state funds). Finally, the magistrate relied on the district court's declination of Smith's motion to amend because the section 1983 claim against DFT would be "futile," and this court's statement in the course of affirming the district court that "it would be inconceivable that such an act [calling an illegal strike] on the part of the union could be treated as an act under color of state law for the purposes of Section 1983," as further evidence that Smith's counsel should have known, or come to realize, the frivolous nature of the civil rights claim against the Union. We disagree.
 
 
 16
 Although the Supreme Court precedents cited by the magistrate clearly make it very difficult for a private party to be engaged in state action, they do not rule out the possibility that a labor organization, under certain circumstances, could be engaged in state action, even while directing illegal activity. A private party can still become a state actor if it acts in concert with state officials, see Lugar, 457 U.S. at 932-34, 939, 941, 102 S.Ct. at 2751-52, 2754, 2755, or if the state has lent "significant encouragement" to its actions, see Blum, 457 U.S. at 1004, 102 S.Ct. at 2785, or if it is exercising powers traditionally the exclusive prerogative of the state, see id. at 1005, 102 S.Ct. at 2786. While it may be clear to the magistrate when the state is merely "acquiescing" in private activity rather than lending "significant encouragement," we still find the concept of "state action" somewhat nebulous. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349-50, 95 S.Ct. 449, 452-53, 42 L.Ed.2d 477 (1974) ("While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer."). In the instant case, Smith was apparently contending that the functions performed by the Board and DFT had become blurred, with DFT assuming the role of policymaker for the school system, and the Board, by failing to fire striking teachers or otherwise curb the DFT's power to enforce its will through illegal strikes, encouraging the illegal strikers and lending support to the Union's activity. In fact, Smith's complaint alleged the one person, a high school principal and agent for the Board, closed school early to hold a teachers' meeting led by DFT representatives for the purpose of getting support for the strike. Under these circumstances, we are not prepared to find that the district court abused its discretion in declining to assess attorney's fees against Smith's counsel for attempting to bring a section 1983 claim against DFT.
 
 
 17
 Moreover, we believe that the magistrate placed undue emphasis on the district court's labelling of Smith's proposed amendment of its complaint as "futile," as well as this court's pronouncement on appeal that it was "inconceivable" that the Union would be engaged in state action while conducting an illegal teachers' strike. Labelling a proposed amendment to a complaint as "futile" is a colorful term of art often employed by courts as a recognized justification for refusing to permit such amendments. Although it is obviously indicative of the court's perception of the strength of a plaintiff's claim, it does not follow as a matter of necessity that all claims so denied are frivolous to the degree that justifies the imposition of fees or other sanctions, or that appeals from the denials of the motions to amend are bound to be without merit. We place much more significance in the fact that the district court declined to award costs in its final judgment. As for this court's characterization of the section 1983 claim as "inconceivable," we construe that expression as nothing more than a strong opinion on the merits of the claim in the context of the appeal, again not necessarily implying that the allegation (or the appeal) was frivolous. We find much greater significance than did the magistrate in the fact that the same panel that heard the appeal and rendered this strong evaluation against Smith's case declined to assess double costs against Smith, as requested by DFT for Smith's allegedly bringing a frivolous appeal, finding such action "unwarranted." Smith, 728 F.2d at 360. Indeed, we believe that the magistrate, by emphasizing the district court's and this court's ultimate findings regarding Smith's section 1983 claim, while simultaneously discounting our express finding that the appeal was not so frivolous as to warrant our sanctioning the plaintiff, came perilously close to engaging in post hoc reasoning of the type the Supreme Court has explicitly cautioned against when considering the assessment of attorney's fees. See Christianburg, 434 U.S. at 421-22, 98 S.Ct. at 700-01.
 
 
 18
 Finally, we believe that the magistrate erred in finding that the suit against DFT was motivated by bad faith anti-union animus. The magistrate supported his conclusion primarily by reference to a statement in Smith's appellate brief that "[a]s DFT is fundamentally antagonistic to the system in order to create the controversy that justifies its existence, its exclusive presence and bargaining rights under Michigan law runs counter to every principle of American governmental democracy." We fail to perceive, however, how this type of statement, without more, can establish that Smith's suit against DFT was motivated by an improper purpose justifying an assessment of attorney's fees. In our view, the allegedly anti-union sentiments attributed to Smith's counsel, standing alone, reflect only a zealous advocacy and an attempt to explain the theory underlying Smith's assertion that DFT was engaged in state action for purposes of section 1983. Consequently, in the absence of other evidence, such as dilatory tactics or harassing conduct on the part of Smith's counsel, we find that an insufficient basis existed for the magistrate to conclude that the plaintiffs' attorney instituted or maintained the suit against DFT for an improper purpose.
 
 
 19
 In light of the foregoing, the district court did not abuse its discretion in refusing to assess DFT's attorney's fees against Smith's counsel under its inherent powers to award fees based on bad faith litigation.
 
 IV.
 
 20
 Another basis available to the district court for the imposition of attorney's fees against Smith's counsel was provided by that statute which states:
 
 
 21
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 22
 28 U.S.C. Sec. 1927 (1982). In United States v. Ross, 535 F.2d 346 (6th Cir.1976), this court noted that section 1927 should be strictly construed because it is penal in nature, id. at 350, and interpreted the "unreasonably and vexatiously" language of the statute to require that an attorney's personal responsibility "flow only from an intentional departure from proper conduct or, at a minimum, from a reckless disregard of the duty owed by counsel to the court." Id. at 349. More recently, however, we held that the imposition of section 1927 sanctions against counsel "does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have carte blanche to burden the federal courts by pursuing claims that he should know are frivolous." Haynie v. Ross Gear Division of TRW, Inc., 799 F.2d 237, 243 (6th Cir.1986) (per curiam), vacated as moot, --- U.S. ----, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987); see also Jones v. Continental Corp., 789 F.2d 1225, 1230 (6th Cir.1986).
 
 
 23
 In the instant case, requiring Smith's counsel to personally bear the responsibility for DFT's attorney's fees is unwarranted under either the Ross or the Haynie standards. Although Smith's suit against DFT was ultimately found to lack merit, its theory of liability was not so obviously precluded by existing precedent that the attorney should have known that the claim was frivolous. In addition, there is no evidence that Smith's attorney pursued the plaintiffs' suit through the use of multiplicative litigation tactics that were harassing, dilatory, or otherwise "unreasonable and vexatious." Accordingly, we find no abuse of discretion in the district court's refusal to impose sanctions against Smith's attorney pursuant to section 1927.
 
 V.
 
 24
 The third and final basis available to a district court for imposing attorney's fees against a party's counsel is found in Fed.R.Civ.P. 11. Prior to its amendment effective August 1, 1983, Rule 11 provided that "[t]he signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Regarding the sanctions which could be imposed against an attorney, the rule only stated that "[f]or a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action." Despite the rule's silence on whether an attorney could be held responsible for opposing counsel's fees, the weight of authority suggests that such monetary sanctions were permitted as an "appropriate disciplinary action" under the proper circumstances. See Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1166-67 (7th Cir.1983) (citing cases). The rule, however, required a showing of subjective bad faith before imposing fees and costs against counsel. Hashemi v. Campaigner Publications, Inc., 784 F.2d 1581, 1583 (11th Cir.1986); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1177 (D.C.Cir.1985); Badillo, 717 F.2d at 1167; Nemeroff v. Abelson, 620 F.2d 339, 350 (2d Cir.1980) (per curiam); see also Albright v. Upjohn Co., 788 F.2d 1217, 1221 (6th Cir.1986). Finally, the decision of whether or not to impose sanctions under the old rule was left to the discretion of the district court. See Westmoreland, 770 F.2d at 1174 & n. 8.
 
 
 25
 Rule 11 was amended in 1983 to emphasize the responsibilities of attorneys and stress the need for some prefiling inquiry into both the facts and the law. Albright, 788 F.2d at 1221; Fed.R.Civ.P. 11 advisory committee's note. The new rule explicitly authorizes the sanctioning of an attorney who violates the rule through the imposition of attorney's fees. Moreover, the standard is now an objective one of " 'reasonableness under the circumstances. This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation.' " Albright, 788 F.2d at 1221 (quoting Fed.R.Civ.P. 11 advisory committee's note) (citation omitted). As the current rule implies, "sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." Westmoreland, 770 F.2d at 1174. Finally, once a violation of the rule is found, the district court must impose some sanction against the offending attorney, with only the type and amount of the sanction left to the discretion of the court. Albright, 788 F.2d at 1221-22; Westmoreland, 770 F.2d at 1174-75.
 
 
 26
 We perceive of no reason to apply amended Rule 11 in the instant case, where all of the pleadings, motions, and papers signed by Smith's attorney which could form a basis for a violation of the rule were filed with either the district court or this court prior to the effective date of the rule's amendment. See Hashemi, 784 F.2d at 1583-84; 97 F.R.D. 165 (1983) (Order of the Supreme Court Transmitting the Amendment of the Federal Rules of Civil Procedure to Congress). Applying the standard applicable to the former rule, we find no violation of the rule for the same reasons we found insufficient evidence of subjective bad faith to justify the assessment of attorney's fees under the bad faith exception to the American Rule. Moreover, even if the current version of Rule 11 was applicable in the instant case, we would find no violation. DFT did not claim that Smith's complaint, motion to amend, and appeal were not well grounded in fact. Rather, the basis for DFT's motion for attorney's fees was that Smith's action was frivolous and brought for an improper purpose. For the reasons previously noted, see supra part III, we reject these assertions.
 
 VI.
 
 27
 For the foregoing reasons, the district court's order is AFFIRMED.
 
 
 
 [1]
 In reaching this conclusion, we reject, for several reasons, DFT's argument that the requirement of making timely objections to a magistrate's report should not apply to it because DFT prevailed in its motion for attorney's fees. First, in a sense, DFT did not prevail at all in its motion for attorney's fees. The motion requested that Smith, not Smith's counsel, be assessed for attorney's fees pursuant to 42 U.S.C. Sec. 1988, which authorizes prevailing civil rights defendants to recover attorney's fees if the court finds that the plaintiff's claim was " 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " Hughes v. Rowe, 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)). The magistrate appears to have recommended that fees be assessed pursuant to this statute, but that only Smith's counsel be held responsible. However, since an award under section 1988 may only be charged against the losing party, not the party's attorney, Roadway Express, Inc. v. Piper, 447 U.S. 752, 761 & n. 9, 100 S.Ct. 2455, 2461 n. 9, 65 L.Ed.2d 488 (1980); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1373-74, 94 L.Ed.2d 689 (1987); 42 U.S.C. Sec. 1988 (1982), such a recommendation alone would have been tantamount to a recommendation of no award at all. DFT won a recommendation for recovery of attorney fees only because the magistrate considered alternative grounds for assessing fees. Next, DFT acquired from the magistrate a recommendation that limited both the size of the award (reducing DFT's requested attorney's fees by half) and the sources available for recovery of the fees. DFT responded by taking exception to the reduction of its fee request, yet made no objection to that part of the magistrate's recommendation which had the potential for hampering recovery of any attorney's fees DFT may have eventually been awarded. Under these circumstances, we find DFT's argument somewhat disingenuous. Finally, adoption of DFT's position would dilute the beneficial effect of requiring objections to magistrates' reports and recommendations to be raised or waived, by requiring reviewing courts to consider any matters which might have been, but were not, objected to by a party partially, but not completely, standing to benefit from a magistrate's recommendation. Indeed, DFT's theory would have permitted it to raise the issue of the magistrate's reduction of its fee request without having made an objection to that matter. We decline to create an exception to the magistrate objection rule that would have this result
 
 
 [2]
 Moreover, assuming arguendo that the matter of the individual plaintiffs' responsibility for DFT's attorney's fees is before us, we reject the Union's contention that Smith should have been assessed for the fees under 42 U.S.C. Sec. 1988, pursuant to the court's inherent power, or by operation of Fed.R.Civ.P. 11, for the same reasons we find that the district court did not abuse its discretion in declining to assess fees against the plaintiffs' counsel