908 F.2d 972
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert W. BROWN, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-2125.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1990.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges; and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Robert W. Brown appeals the defendant Secretary of Health and Human Service's (Secretary) denial of his claim for social security disability benefits. For the following reasons, we affirm.
 
 I.
 
 2
 Brown was born in 1932 and was 52 years old in 1984 when his insured status expired. Brown received a high school education and was employed as a supervisor at General Motors (Fisher Body) from June 1955 to April 1978. In April 1977, Brown began treatment with Dr. M. Minui, a psychiatrist, for depression and nervousness. Brown related to Minui that he was under increasing pressure at work and that his superintendent and general foreman did not treat him properly. Brown's symptoms included nervousness and lack of sleep. Brown took a six-month sick leave in early 1977. After several return stints at his supervisory job, Brown left work in April 1978. Dr. Minui's notes from the visits in 1978 indicate that at times Brown was depressed but at times he was doing "fair."
 
 
 3
 In March 1979, Dr. Minui completed a questionnaire for the Disability Determination Service, in which he diagnosed Brown as having severe anxiety and depressive neurosis. J.App. at 179. Dr. Minui opined that Brown was severely impaired in his ability to relate to supervisors and co-workers and moderately impaired in his ability to achieve goals and respond to time limits and to exercise acceptable judgment. Brown continued to see Minui, though at a reduced frequency, over the next year. In May 1980, Dr. Minui reported that although Brown had made some progress, he was still totally disabled, unable to work in any occupation. Dr. Minui repeated this opinion after evaluations in May 1982 and in December 1984.
 
 
 4
 Brown also saw other doctors on a consultive basis. In July 1978, Dr. David Olen performed a psychiatric examination of Brown at the request of G.M. Dr. Olen noted Brown's symptoms of nervousness, depression, insomnia, and vague suicidal tendencies. Dr. Olen found that Brown's condition began after a new group of supervisors was hired who had what Brown considered unreasonable expectations. Dr. Olen opined that Brown's condition was improving and that he would be able to return to work in one month. In April 1979, Dr. D. Pommerang, the doctor at Brown's workplace, prepared a certificate stating that Brown was disabled on account of recurrent depression and coronary disease. Dr. Pommerang stated that "[t]his man has a severe depression, and has been under treatment for 2 1/2 years with at least three different psychiatrists.... I am at present unable to suggest a job he can perform in our facility. If he should improve in the future, he might be able to return to a non-stressful assignment with limited responsibility." Id. at 207. Finally, in March 1987, over two years after his insured status had expired, Brown was examined by Dr. K. Piotrowski. He noted that Brown was able to control his symptoms of anxiety and depression as long as he did not go back to the G.M. plant. Dr. Piotrowski diagnosed a probable dysthemic disorder. In January 1988, Dr. Piotrowski submitted a report to Brown's representative, which stated that Brown had severe limitations on his ability to respond to supervision and moderately severe limitations on his ability to respond appropriately to co-workers and to customary work pressures. He opined that Brown would not be able to work again, and that as long as he did not have to work, there would be no serious psychological problems. Id. at 268.
 
 
 5
 On May 27, 1986, Brown filed his claim for disability insurance benefits. The application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge (ALJ) Dores D. McDonnell denied benefits to Brown. The ALJ considered Brown's allegations that he was disabled due to severe depression and a heart condition from April 1978 to December 1984, when insurance benefits expired. Since Brown had filed a prior application which was denied in April 1979, only evidence of disability during the 1979-1984 time frame was considered relevant.
 
 
 6
 The ALJ examined various physicians' reports and heard testimony from a vocational expert, Dr. Tennyson Wright. ALJ McDonnell asked Dr. Wright a hypothetical question concerning the availability of jobs to a person with moderate limits in his ability to interact with the general public. Dr. Wright answered that there were 1,600 jobs in the light and sedentary classification which such an individual could perform, such as food tabulator, cafeteria attendant, and toll collector. Id. at 50. Dr. Wright also stated on cross-examination that a person with a moderate impairment in his ability to achieve goals and respond to time limits and severely impaired in relating to supervisors and co-workers would not be able to hold any jobs. After rejecting evidence of any serious coronary problem, ALJ McDonnell concluded that Brown's psychological problems did not meet the requirements for disability under the Social Security Act. ALJ McDonnell, relying heavily on Dr. Minui's notes, observed that Brown had difficulty in coping with his supervisors and his role as foreman. However, the ALJ noted that subsequent to his medical retirement, Brown was able to cope very well, keeping active around the house and going on fishing trips. Because Brown was able to maintain hobbies and daily activities around the home, ALJ McDonnell concluded that "the evidence confirms that claimant's inability to cope with high stress situations such as were involved in his prior job result[ed] [sic] from his supervisory duties and dealing with a particular supervisor who he perceived as totally unreasonable." Id. at 21. The ALJ concluded that:
 
 
 7
 nothing in the record [supports], with respect to at least relatively simple types of unskilled work not involving a highly stressful work situation, the inability to relate appropriately [to] the supervisors and co-workers or the inability to achieve goals ... Clearly, the opinion of those physicians appeared to be based exclusively on the claimant's prior job situation and did not reflect his remarkably improved functioning when out of that particular work situation.... [The] opinions [of Drs. Minui and Piotrowski are] only valid and supported by the documentary evidence of record with respect to his past job.
 
 
 8
 Id. at 22.
 
 
 9
 The Appeals Council denied review; and on appeal, the United States District Court for the Eastern District of Michigan, Judge Avern Cohn presiding, adopted the Magistrate's report and recommendation and granted summary judgment for the Secretary.
 
 II.
 
 10
 Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching his conclusion. Richardson v. Perales, 402 US 389, 401 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The scope of our review is limited to the record only. We may not review the evidence de novo, make credibility determinations, or reweigh the evidence. Id.
 
 
 11
 On appeal, Brown attacks the ALJ's decision with regard to the psychological problems only. Brown argues that substantial evidence does not support the ALJ's determination that he retained residual functional capacity for three reasons. First, Brown notes that the medical opinions and diagnoses of treating physicians, such as Dr. Minui, are entitled to substantial deference from the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). In order to be entitled to disability insurance benefits, a claimant must show: (1) an impairment for a continuous period of at least twelve months; and (2) that the impairment renders the claimant unable to engage in any substantial gainful activity. It is undisputed that the medical opinions of treating physicians are entitled to great deference. However, the ALJ is not bound by these conclusions and can reject them if they are "not supported by any detailed, clinical, diagnostic evidence." King, 742 F.2d at 973. In the instant case, the ALJ found that the medical evidence did not support a conclusion that Brown was incapable of any work. Instead, ALJ McDonnell examined the doctors' notes and concluded that Brown's impairment was related to the specific problems with his supervisory job at G.M. The ALJ concluded that Brown retained the residual functional capacity to work at several unskilled jobs. We find that substantial evidence supports the ALJ's refusal to follow the conclusions of the treating physician.
 
 
 12
 Second, Brown contends that the U.S. Magistrate improperly gave little weight to Dr. Piotrowski's findings because the examination was over two years after the disability period expired. The U.S. Magistrate's report noted that because Dr. Piotrowski's examination was conducted over two years after the disability period expired, it had little probative value. Brown relies upon Blankenship v. Bowen, 874 F.2d 1116 (6th Cir.1989), where this court ruled that an examination conducted soon after the disability period expired could not be summarily dismissed by the Secretary because of the progressive nature of the disorder. The court ruled that the Secretary must establish by substantial evidence that the disability began only on the date of the examination. We think that Blankenship is distinguishable from the instant case. Whereas Blankenship involved an examination conducted within months of the end of the disability period, Dr. Piotrowski's examination was conducted over two years later. In any event, the ALJ considered Dr. Piotrowski's conclusions in his decision. The ALJ rejected these conclusions for the same reason as Dr. Minui's--the belief that the psychological problems were specifically related to the supervisory job at G.M., not all jobs. Therefore, we conclude that the U.S. Magistrate's dismissal of Dr. Piotrowski's report is not relevant because even taking the report into consideration, substantial evidence supports the Secretary's conclusions.
 
 
 13
 Finally, Brown contends that the ALJ asked an improper hypothetical question to the vocational expert because she did not include all of the relevant facts. Specifically, he argues that the ALJ should not have included three factors from the medical reports for 1977, the year before the plaintiff's alleged onset date. Brown also states that the vocational expert's response to the hypothetical questions in cross-examination, which reflected the diagnoses of Drs. Minui and Piotrowski, indicate that he does not have the residual functional capacity to work.
 
 
 14
 The Secretary first argues that Brown did not raise this argument in his objections to the Magistrate's report. As such, the Secretary contends that Brown has waived the argument. See Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir.1987) ("only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") Upon review, we find that Brown did not raise this argument in his objections to the Magistrate's report because the Magistrate's report did not discuss the issue. Therefore, we do not consider this argument waived.
 
 
 15
 Nevertheless, on the merits, we hold that while the 1977 activities should not have been included in the hypothetical question, such inclusion was harmless error. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987) (citations omitted). The question accurately reflected the ALJ's determinations as to impairment--a moderate limit on his ability to interact with other people and an inability to supervise a large number of workers. While this hypothetical does not match the conclusions of Drs. Minui and Piotrowski, it does reflect the findings of the ALJ, who contradicted the doctors' conclusions. As such, we find that the hypothetical question was proper.
 
 III.
 
 16
 For the foregoing reasons, we AFFIRM the decision of the district court.