Lakeith MADDEN, Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant.

No. 2:00–CV–636.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 16, 2001.

Leslie Varnado, Jr., The Legal Aid Society of Columbus—2, Columbus, OH, for Lakeith Madden.

Randall Eugene Yontz, United States Attorney's Office—2, Columbus, OH, for Kenneth S. Apfel.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

On July 16, 2001, the Magistrate Judge issued a *Report and Recommendation* recommending that plaintiff's motion for summary judgment be denied, that the Commissioner's motion for summary judgment be granted and that this action be dismissed. Although the parties were specifically advised of their right to object to the *Report and Recommendation,* and of the consequences of their failure to do so, there has nevertheless been no objection to the *Report and Recommendation.*

The *Report and Recommendation* is hereby **ADOPTED AND AFFIRMED.** Plaintiff's motion for summary judgment is **DENIED;** the Commissioner's motion for summary judgment is **GRANTED** and this action is hereby **DISMISSED.**

## REPORT AND RECOMMENDATION

KING, United States Magistrate Judge.

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income as an adult. This matter is now before the Court on the cross-motions of the parties for summary judgment.

Plaintiff Lakeith Madden had been awarded supplemental security income as a child, based on a diagnosis of arthritis in the legs. Those benefits ceased in August 1997, when plaintiff reached the age of 18. On re-determination of eligibility as an adult, the agency determined, both initially and on reconsideration, that plaintiff was not entitled to benefits. Plaintiff thereupon requested a *de novo* hearing before an administrative law judge.

On April 23, 1999, plaintiff, represented by counsel, appeared and testified at an

administrative hearing, as did his mother, a medical expert and a vocational expert. In a decision dated August 3, 1999, the administrative law judge found that, notwithstanding plaintiff's severe impairments, he nevertheless has the residual functional capacity to perform a limited range of light work that does not require more than occasional bending and climbing, which does not require stooping, climbing ladders or scaffolds or being around moving or hazardous equipment, which does not require repetitive movement of the left knee, and which does not require more than low stress work or more than 1– or 2–step simple tasks and instructions. The administrative law judge found, further, that plaintiff's impairments do not preclude the performance by him of jobs that exist in significant numbers in the national economy, including such jobs as assembler, sorter and inspector. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act and is therefore not entitled to supplemental security income. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 29, 2000.

Plaintiff Lakeith Madden was born May 5, 1979. At the time of the administrative hearing, he was in the twelfth grade. *A.R.* 277. He has had difficulty in school and was assigned to special education classes, *A.R.* 280, although he testified that he can read and write and perform simple mathematic functions. *Id.* He testified at the administrative hearing that he has never worked. *A.R.* 278.[1]

Mr. Madden complained at the administrative hearing of arthritis pain in his legs, more particularly in the left leg. His kneecap also swells. In addition, he was shot in the left leg in December 1998 and has experienced pain associated with that injury since that time. He uses a cane and plays basketball no more than once a month. He watches television "a lot every day." *A.R.* 284. He is able to shop for groceries and goes shopping at the malls. He does not drive, but can ride the bus.

Plaintiff lives with his mother, who does the cooking for the household. He is able to do his own laundry, *A.R.* 283, and care for his own personal needs. He helps with the housework. He visits his cousins every weekend and has visitors to his home every day. He attends ball games with his friends, attends church twice per month and goes to the movies on a weekly basis.

Plaintiff testified that he can stand for 15 minutes before his legs begin to tighten. He can sit for half an hour before needing to stretch his leg. He estimates that he can walk 3 blocks or 20 minutes before becoming tired. He cannot bend to the floor. He is unrestricted in his ability to lift. *A.R.* 285.

He uses a heating pad for pain in his knee. He experiences pain in his knee cap "twice a day" for about 10 minutes each time. *A.R.* 286. He testified variously that pain medication does not alleviate the pain but does "make [the pain] go away," *A.R.* 287, 288, for about 3 hours. On a scale of 1 to 10, plaintiff estimated his typical pain at 6 or 7.

Plaintiff testified that pain interferes with his sleep, although he gets "at least 10 hours sleep" per night. *A.R.* 288. Other than tiredness, his medications have no side effects. *A.R.* 289.

Adrienne Madden, plaintiff's mother, also appeared and testified at the administrative hearing. According to Ms. Mad-

---

1. There is some reference to work in the psychological evidence of record. At a minimum, however, it does not appear that plaintiff has engaged in substantial gainful employment.

den, her son sometimes awakens her in the middle of the night with complaints of leg pain. She soaks it in hot water and administers a heating pad and medication. *A.R.* 293. Although she characterized plaintiff as a slow learner, Ms. Madden also testified that he can read the sports section of the newspaper. *A.R.* 307.

Plaintiff has never undergone psychological treatment, but the record does reflect three consultative psychological assessments.

In June 1997, Lennis H. Green, Ph.D., reported that plaintiff plays in a basketball league. Dr. Green did not perceive any exaggeration or minimization of symptoms. *A.R.* 194. Plaintiff's affect was reactive and appropriate. He reported worrying and feelings of anxiety. He was oriented in all three spheres and had a "fair," *A.R.* 195, ability to perform mathematic functions. Insight and judgment were poor. Dr. Green estimated plaintiff's intelligence as "borderline." *Id.* On the WAIS–R, however, plaintiff achieved a verbal I.Q. score of 86, a performance I.Q. score of 83 and a full scale I.Q. score of 83, which were interpreted as valid measures of plaintiff's intellectual functioning. On the Nelson Reading Skills Test, plaintiff achieved a third grade level equivalency. On the Wechsler Memory Scale, plaintiff achieved a memory quotient of 87. Dr. Green summarized:

> His ability to interact is moderate. He is pleasant and cooperative but has obvious poor judgment and low I.Q. His understanding and memory are adequate for several step easy tasks. His attention, concentration, pace and persistence are reduced by low I.Q. His ability to withstand the pressures of daily work activity is moderate. He is able to tolerate school.

*A.R.* 197. Dr. Green made no diagnosis in Axis I, but diagnosed borderline intellectual functioning. He placed plaintiff's GAF at 70, which is indicative of only mild dysfunction. *Id.*

In June 1997, Frank J. Orosz, Ph.D., reviewed this record on behalf of the agency and found no evidence of a severe mental impairment.

In August 1997, plaintiff was consultatively evaluated under the direction of James E. Savage, Jr., Ph.D. Dr. Savage reported that plaintiff uses Motrin for arthritis pain in his legs. Plaintiff also recounted a history of poor performance at school, which included behavioral problems and a high absentee rate. Dr. Savage noted that plaintiff had worked "for several months" at a Taco Bell and at a gas station and reported that he "enjoys playing basketball and reading." On the WAIS–R, plaintiff achieved a verbal I.Q. score of 79, a performance I.Q. score of 83 and a full scale I.Q. score of 79, placing plaintiff in the borderline to low average range of intellectual ability. However, Dr. Savage concluded his evaluation with a characterization of plaintiff's intelligence as "low average." *A.R.* 229. Dr. Savage recommended a comprehensive educational and vocational evaluation, with individual psycho-social counseling and tutorial assistance. *A.R.* 230.

In April 1998, Vickie McCreary, Ph.D., reviewed the evidence of record on behalf of the agency and concluded that, while the record documented some evidence of an adjustment disorder with mixed features, plaintiff's mental condition neither met nor equaled any of the Listings of Impairments. Moreover, the record documented only a slight restriction of activities of daily living, only moderate difficulty in maintaining social functioning, seldom to often deficiencies of concentration, persistence or pace, but never any episodes of deterioration or decompensation in a work or work-like setting. *A.R.* 249. In an assessment of plaintiff's mental residual

functional capacity, Dr. McCreary expressed her opinion that plaintiff was moderately limited only in his ability to interact appropriately with the general public and to respond appropriately to changes in work settings. In sum, Dr. McCreary stated that the record does not evidence "a mental impairment that substantially limits his functioning." *A.R.* 253.

In April 1999, Rhonda J. Lilley, Ph.D., performed consultative psychological evaluations of the plaintiff at the request of his counsel. The MMPI was interpreted as invalid. *A.R.* 261. On the Beck Depression Inventory, plaintiff's score was indicative of severe depression. On the WRAT-R2, plaintiff performed at a third grade level, which was consistent with borderline intellectual functioning. Dr. Lilley diagnosed a borderline intellect with personality disorder, mixed type with avoidant and dependent features. She assessed his current GAF at 55, which is indicative of moderate dysfunction in vocational or social areas. Dr. Lilley commented:

> I believe he confabulated some responses in an attempt to please the examiner. He also seemed to be attempting to exaggerate some symptoms as he wants very much to maintain benefits. However, it is unlikely he has the intellectual capacity or insight to fake during the interviews and projective tests.

*A.R.* 264. Dr. Lilley continued:

> Mr. Madden does appear to be disabled at present. I recommend psychotherapy for him to address emotional issues. Involvement with a settlement house or other community program might help with developing social skills and self-esteem. Mr. Madden's symptoms do not appear to warrant a referral for psychotrophic medication.... With proper training and support he may be able to work at some point. Mr. Mad-

den does not meet the criteria for a referral to MR/DD. *Id.*

Gordon B. Snider, M.D., a Board-certified internist, testified as a medical expert at the administrative hearing. According to Dr. Snider, the record documents a mild instability of the left knee, which allows the knee cap to move back and forth, status post hernia repair x3, and status post surgical repair of the penis. The record also documents a decreased learning ability and a mild adjustment disorder. Although the medical record reflected diagnoses of arthritis, Dr. Snider noted that laboratory work performed in 1997 was normal for all forms of inflammatory arthritis. None of plaintiff's documented impairments, whether considered individually or in combination, *A.R.* 302, equal or meet any of the Listings. However, plaintiff's leg impairment and associated pain would limit plaintiff to walking for no more than 15 minutes at any one time, only occasional standing, no stooping with the left side, no climbing or crawling, only occasional bending and no operating heavy equipment. He estimated that plaintiff could carry up to 20–25 pounds on an occasional basis and up to 10 pounds frequently.

Dr. Snider's residual functional capacity assessment of plaintiff agreed almost entirely with that of plaintiff's treating orthopedist, James H. Rutherford, M.D. *A.R.* 209. However, unlike Dr. Rutherford, Dr. Snider saw no need for limitations on plaintiff's ability to lift. *A.R.* 303.

Carl Hartung testified as a vocational expert. The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile, with a marginal educational level, and who is limited to lifting and carrying no more than 10 pounds frequently, and 20 pounds occasionally, to sitting no more than 6 hours throughout an 8–hour workday, to

standing no more than one-half hour at a time for a total of 2–3 hours and to walking no more than 15 minutes at a time for a total of 2–3 hours. The claimant should avoid stooping below the knee level, climbing, repetitive motions with the left knee and unprotected heights and operating heavy equipment. He would also be limited to no more than occasional bending, and climbing of ramps or stairs. The vocational expert testified that such a claimant could perform 50 percent of the small parts assembler, sorter and inspector or checker jobs. There are more than 20,000 jobs in the central Ohio area which such a claimant could perform, the cited jobs being only examples of the work such a claimant could perform. Even if the claimant were limited to sedentary exertion, that claimant could still perform those jobs. Finally, the vocational expert testified that such a claimant could perform those jobs even assuming the credibility of plaintiff's testimony and that of his mother.

Mr. Hartung made clear that this opinion did not assume any mental limitations. If the claimant suffered a mild to moderate impairment in the area of work-related mental activities, but remained able to perform 1– or 2–step simple instructions and low stress work, such a claimant could nevertheless perform all but the assembler jobs, which have high production requirements.

In his decision, the administrative law judge adopted Dr. Snider's residual functional capacity assessment and found that plaintiff has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, to sit for 6 hours throughout an 8–hour workday and to stand and walk for 2–3 hours each, throughout an 8–hour workday, standing for only 1/2 hour at a time and walking for only 15 minutes at a time. From a nonexertional standpoint, the administrative law judge found that plaintiff could do no more than occasional bending and climbing ramps and stairs, below-knee stooping, climbing ropes, ladders or scaffolds, working around moving or hazardous machinery and engaging in repetitive movement of the left knee. He would also be limited to low stress work and simple 1– and 2–step tasks and instructions.

With respect to plaintiff's credibility, the administrative law judge noted that plaintiff's complaints of pain and discomfort were inconsistent with the objective medical evidence, which was essentially negative for any condition except a left knee condition which Dr. Rutherford indicated would not prevent all substantial gainful employment. With respect to plaintiff's alleged mental impairment, the administrative law judge noted all three psychological evaluations reflected in the record and expressly rejected that of Dr. Lilley "because it is contrary to the medical evidence." *A.R.* 18. Relying on the plaintiff's testimony regarding his activities of daily living, the administrative law judge found that plaintiff's mental impairments involve only a "slight restriction of daily activities and slight difficulties in maintaining social functioning, have often involved deficiencies in concentration, persistence or pace, and have never involved episodes of deterioration or decompensation in a work or work-like setting." *A.R.* 18–19. Specifically, the administrative law judge found that plaintiff's mental impairment does not preclude the performance by him of a restricted range of light work. Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff is not disabled within the meaning of the Social Security Act and is not entitled to supplemental security income.

■ Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's deci-

sion is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). This Court does not try the case *de novo,* nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk,* 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) *(en banc ).*

In his motion for summary judgment, plaintiff challenges the administrative law judge's findings relating to plaintiff's claimed mental impairment. The record in this action reflects a clear conflict as it relates to plaintiff's mental status. There is no opinion of a treating psychologist; all three psychological reports were prepared by consultative evaluators. Thus the report of none of these consultative evaluators was entitled to any special degree of deference. *See Barker v. Secretary, HHS,* 40 F.3d 789, 794 (6th Cir.1994); *Atterberry v. Secretary of Health and Human Services,* 871 F.2d 567, 572 (6th Cir.

1989). Where, as here, the record reflects conflicting evidence, it is for the Commissioner, and not this Court, to resolve those conflicts. *Kinsella v. Schweiker,* 708 F.2d 1058.

Plaintiff also contends that the administrative law judge improperly failed to articulate the basis for his resolution of the conflicting evidence. The Court disagrees. The administrative law judge noted that plaintiff's testimony regarding his daily activities was inconsistent with a disabling mental or exertional impairment. Moreover, as the administrative law judge noted, the Lilley report referred to "confabulated ... responses" on the part of the plaintiff. Furthermore, Dr. Savage characterized plaintiff's intelligence as "low average." *A.R.* 229. Dr. Green's consultative evaluation provides substantial support for the residual functional capacity assessment found by the administrative law judge. This Court concludes that the administrative law judge fairly considered the conflicting evidence, properly evaluated those conflicts and articulated his reasons for doing so.

Plaintiff also contends that the administrative law judge failed to consider the combined effects of plaintiff's mental and physical impairments. To the contrary, however, and notwithstanding the relative paucity of evidence of a physical impairment, the administrative law judge assigned a residual functional capacity that accommodated both physical and mental impairments. Moreover, that residual functional capacity finds substantial support in the record, both from the professional assessments reflected in the record and from plaintiff's own testimony. Accordingly, the Court concludes that the Commissioner's conclusion finds substantial support in this regard.

Plaintiff also contends that the administrative law judge erred in making credibil-

ity determinations. First, the plaintiff contends that Dr. Green's report, upon which the ALJ relied, made inappropriate comments regarding plaintiff's mother. However, there is no evidence that the administrative law judge relied upon such comments in reaching his conclusions. Moreover, it was not improper for the administrative law judge, in evaluating the evidence in this case and plaintiff's claims of disability, to rely upon plaintiff's own testimony regarding his daily activities. The record in this action reflects regular and substantial activity on plaintiff's part and relatively little by way of evidence of any physical and mental impairment. The administrative law judge's resolution of plaintiff's claim for supplemental security income is supported by substantial evidence in the record.

It is therefore **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED,** that the Commissioner's motion for summary judgment be **GRANTED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Smith v. Detroit Federation of Teachers, Local 231, etc.,* 829

F.2d 1370 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).