Robert **BRERETON**, et al., Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

Civil No. 94–CV–40511–FL.

United States District Court,
E.D. Michigan,
Southern Division.

July 9, 1997.

Robert G. Lewandowski, Mount Clemens, MI, for Plaintiffs.

Steven J. Riegel, Senior Aviation Counsel, Torts Branch Civil Division,. Washington, DC, for Defendant.

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

NEWBLATT,. District Judge.

The Court having reviewed the Magistrate Judge's Report and Recommendation, filed on June 3, 1997, as well as any objections filed thereto,

**IT IS ORDERED** that the Report is accepted and entered as the findings and conclusions of this Court.

## REPORT AND RECOMMENDATION

GOLDMAN, United States Magistrate Judge.

### I. *Background*

This action arises out of the crash of a Beech King Air B–100 airplane near Romeo, Michigan, on November 22, 1991. While on an instrument approach to Romeo Airport, the plane descended through a dense cloud cover, struck several trees,· and crashed into the ground, killing all three occupants: Russell W. Ligon, Albert J. Brereton, and Michael Byford. The plaintiffs filed this action against the United States Government under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, alleging negligence against air traffic controllers stationed at Selfridge Air National Guard Base in Mt. Clemens,

Michigan. Plaintiffs seek damages for the wrongful death of Albert Brereton.

A bench trial on the issue of liability was held in November·and December 1995 before United States ·District Judge Stewart A. Newblatt, who found the United States to have been forty-percent at fault and pilot-in-command Albert Brereton to have been sixty-percent at fault for the accident. The parties recently have completed discovery in the damages· phase· of this litigation and are now prepared for trial on·that issue.

The Government filed six motions in limine which were heard on April 9, 1997. Two of these motions were held in abeyance pending the filing of supplemental briefs and are the subject of this Report and Recommendation. Specifically, the parties were directed to address whether hedonic damages are recoverable under the Michigan Wrongful Death Act ("MWDA"), M.C.L. § 600.2922, and whether plaintiffs' economic expert, Stan V. Smith, should be allowed to testify under the standards announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[1]

### II. *Discussion*

#### A. *Hedonic Damages*

■ The Government filed a motion in limine [2] seeking to exclude expert testimony on the issue of hedonic damages. Hedonic damages represent the loss of enjoyment of life,[3] and to the extent that the definition is so limited, are recognized as an element of damages in tort actions by the Michigan Standard Jury Instructions, which allow recovery for the "denial of social pleasure and enjoyments" as an element of pain and suffering. Mich. S.J.I.2d § 50.02; *see also* C. Simkins & A. Craig, "The Admissibility of Expert Testimony on Hedonic Damages," 10 Mich. L.W. 195 (Dec. 18, 1995) (indicating,

---

1. Plaintiffs intend to offer Mr. Smith's testimony to assist the factfinder in placing a value on both the decedent's loss of enjoyment of life and the plaintiffs' survivors' damages for loss of the decedent's society and companionship.

2. Entitled: "Motion to Preclude Expert Testimony on Hedonic Damages or Use of the 'Willingness–to–Pay' Model" (D.E.# 49).

3. Stan V. Smith deposition at 6; Government's supplemental brief at exh. B. *See also In re Korean Air Lines Disaster of Sept. 1, 1983,* 807 F.Supp. 1073, 1081, n. 7 (S.D.N.Y.1992) ("'Hedonic damages' refers to damages for the loss of the enjoyment of life as affected by physical pain and suffering, physical disability, impairment and inconvenience affecting an individual's nor-·mal pursuits and pleasures of life.")

without citation, recognition by Mich. S.J.I.2d of damages for "loss of enjoyment of life," "lost ability to derive pleasure from living," and "denial of life's social pleasures"). *See also Kurncz v. Honda North America, Inc.,* 166 F.R.D. 386, 388 (W.D.Mi.1996). Mr. Smith, an economist, offers expert testimony to establish a monetary value of life based on a "willingness-to-pay" model.[4] Plaintiffs argue that this evidence is relevant and would be helpful in assisting the factfinder to place a value on the loss of enjoyment of life suffered by the decedent.

In their original motion, the Government argued primarily that such damages are inapplicable to the facts of this case. The Government argued that the Court should exclude testimony regarding hedonic damages both because recovery of hedonic damages is limited to the loss of enjoyment of life experienced by an individual between the time of injury and death—which in this case was either minimal or non-existent—and because Mr. Smith's proposed expert testimony would be neither reliable nor helpful to the fact-finder in placing a value on the decedent's loss of enjoyment of life. In their original response brief, plaintiffs addressed only the second part of the Government's motion, arguing only generally that Mr. Smith's expert testimony should be admissible in this case to assist in the valuation of damages.

After supplementation of the record, the parties' positions are more clear. Defendant also claims that while "hedonic damages" may be available in a personal injury action in which death has not resulted, they are not available as an element of damages under the MWDA.

The MWDA provides, in relevant part, that:

> In every action under this section the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; *reasonable compensation for the pain and suffering. while conscious, undergone by the deceased person during the period intervening between the time of the injury and death;* and damages for the loss of financial support and the loss of the society and companionship of the deceased.

M.C.L. § 600.2922(6) (emphasis added). Wrongful death recoveries in Michigan derive solely from this statute. *Kirchgessner v. United States,* 958 F.2d 158, 159 (6th Cir. 1992). As a statute enacted in derogation of the common law, the MWDA must be narrowly construed so that only those damages explicitly provided for in the act are recoverable. *Kemp v. Pfizer, Inc.,* 947 F.Supp. 1139, 1145 (E.D.Mich.1996), *citing Steward v. Poole,* 196 Mich.App. 25, 29, 492 N.W.2d 475 (1992), *rev'd on other grounds,* 443 Mich. 863, 503 N.W.2d 76, *reconsideration denied,* 444 Mich. 885, 511 N.W.2d 683 (1993); *see also Courtney v. Apple,* 345 Mich. 223, 228, 76 N.W.2d 80 (1956) (MWDA to be construed narrowly; damages limited to those specified by legislature); *but see Wycko v. Gnodtke,* 361 Mich. 331, 339–40, 105 N.W.2d 118 (1960) (pecuniary damages available under MWDA interpreted broadly to include loss of decedent's companionship); *Wood v. Detroit Edison Co.,* 409 Mich. 279, 295, 294 N.W.2d 571 (1980) (Opinion of Moody, J.) (As part of Revised Judicature Act, MWDA is remedial and should be liberally construed).[5]

---

4. *See, infra,* discussion of "willingness-to-pay" model as it relates to loss of companionship.

5. In *Wycko,* the Michigan Supreme Court held that recovery of pecuniary damages under an earlier version of the Wrongful Death Act, M.C.L. 1948, §§ 691.581–691.583 (1959 Cum.Supp.), was not limited to valuation by reference to material considerations but also must include non-economic injuries such as the loss of companionship. *Wycko,* 361 Mich. at 339–40, 105 N.W.2d 118. The loss of companionship, however, was not recoverable as an injury suffered by the decedent or by his survivors but as a means of plac-

ing a value upon the life of the deceased. *Id.* at 340, 105 N.W.2d 118. The court's holding, while expanding the items that could be considered in determining the pecuniary value of the decedent's life, specifically did not expand the damages available under the Act, indicating that the statute limited recovery to pecuniary damages. *Id.* While interpreting the remedial statute in favor of its beneficiaries, the court was careful not to expand the remedies made available by the legislature. Thus, the Supreme Court did not set a precedent to broadly fashion remedies under the MWDA, although they did construe the reme-

The Government does not dispute that hedonic-type damages are recognized under general Michigan tort law. The Government argues, however, that hedonic damages are not recoverable under the express provisions of the MWDA and, in the alternative, that the circumstances surrounding the accident were such that the death of Albert Brereton was instantaneous and he suffered no post-injury, pre-death loss of enjoyment of life.[6] For their part, plaintiffs do not dispute that death was instantaneous upon impact; however, they still press their claim for hedonic damages as part of the pain and suffering decedent experienced from the time the plane struck the tree to the time of its impact with the ground. Thus, the first issue to be resolved is whether damages for the loss of enjoyment of life can be recovered under the MWDA and, if so, to what extent.

The MWDA does not specifically provide for the recovery of hedonic-type damages, and limits compensation for pain and suffering to that consciously experienced between the time of injury and death. *Kemp,* 947 F.Supp. at 1145; M.C.L. § 600.2922(6). Recognizing this, plaintiffs' hedonic damages theory is based on its inclusion as an element of pain and suffering. In both their response brief and their supplemental brief, plaintiffs argue that because the Michigan Wrongful Death Act allows recovery for a deceased

airline passenger's pre-impact fright and terror, *see, e.g., Platt v. McDonnell Douglas Corp.,* 554 F.Supp. 360, 363–64 (E.D.Mich. 1983) (in airplane accident, recovery for pain and suffering under MWDA includes mental suffering, anxiety, suspense and fright in form of pre-impact fright and shock), hedonic damages are available to compensate for the pain and suffering experienced during that time period. Thus, plaintiffs seek a liberal construction of the MWDA to allow hedonic damages in the same manner that they are recoverable under Michigan tort law generally.

■ Whether hedonic damages should be available under the MWDA was recently addressed by the court in *Kemp v. Pfizer, Inc.,* 947 F.Supp. at 1145–46. In a well-reasoned opinion, United States District Judge Paul V. Gadola held that the Michigan Supreme Court would not read the Act so broadly as to allow recovery for "hedonic damages," or for any other post-death damages which a decedent's estate might claim. Judge Gadola found that hedonic damages are only available to living plaintiffs who have been permanently injured such that they cannot enjoy life's pleasures. *Id.* at 1146. I agree with that interpretation and plaintiffs have provided neither law nor persuasive argument to the contrary.[7] Thus, the question is nar-

---

dies contemplated by the legislature in a manner consistent with the statute's remedial nature.

Plaintiffs argue that the MWDA must be broadly construed to allow for the recovery of hedonic damages. But in seeking such a construction, plaintiffs do not ask for a broad interpretation of an ambiguous category of damages available under the Act as in *Wycko* (i.e., "pecuniary damages"), but rather seek to add to the statute an additional category of damages not included by the legislature. Such an interpretation would be a misapplication of *Wycko* and, therefore, plaintiffs' argument that the MWDA must be broadly construed to include hedonic damages is rejected.

6. The Government made this factual assertion at the April 9, 1997 hearing and plaintiffs did not dispute the statement.

7. Plaintiffs rely on two cases, *Sherrod v. Berry,* 827 F.2d 195 (7th Cir.1987), *rev'd on other grounds,* 856 F.2d 802 (7th Cir.1988), and *Molzof v. United States,* 502 U.S. 301, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), to argue that hedonic damages may be recovered in a personal injury case

against the United States. Plaintiffs' response brief at 8. However, these cases do not support recovery of such damages under the Michigan Wrongful Death Act.

*Sherrod* involved a 42 U.S.C. § 1983 claim and did not implicate the MWDA. The court held that under § 1983 police officers who had shot and instantly killed the decedent were liable to his survivors for the value of that person's life. The analysis in *Sherrod* focussed on the particular federal civil rights statute at issue and the reasoning is inapposite to this case.

In *Molzof,* the United States Supreme court held that preclusion of punitive damages under the Federal Tort Claims Act ("FTCA") did not bar the comatose plaintiff from recovering damages for his loss of enjoyment of life. That such damages might be available under the FTCA in a personal injury case brought on behalf of the victim is irrelevant to whether hedonic damages are available under the MWDA. Moreover, the plaintiff in *Molzof* was not dead and, thus, was suffering an actual, physical loss of enjoyment of life caused by his injury. Finally, the court did not permit recovery for the lost value of a prema-

rowed to whether damages for loss of enjoyment of life are available under the MWDA during the time period between injury and death.

Even if a liberal construction of the MWDA would allow the award of hedonic damages as an element of pain and suffering, such damages would not occur until after an individual had suffered an injury which restricted or interfered with his or her enjoyment of life.[8] This might be applicable in the wrongful death context where the decedent suffered a debilitating injury which persisted for a period of time prior to death.[9] The facts of this case, however, do not support such a finding.

■ Under the MWDA, pain and suffering is expressly limited to that consciously suffered by the decedent between the time of injury and death. M.C.L. § 600.2922(6). This limiting language precludes any recovery for damages suffered after death. *See* *Kemp*, 947 F.Supp. at 1145. To the extent that plaintiffs seek damages for Albert Brereton's loss of enjoyment of life that would have been experienced but for his untimely demise, those damages are unavailable. Moreover, to the extent that they seek recovery for loss of enjoyment of life during the period of pre-impact fright and terror, the facts do not support an award of damages for a limitation of activities in the seconds between the time the plane struck the trees and crashed into the ground. To read the MWDA any more broadly would constitute not merely liberal interpretation but judicial legislation. That this court cannot do.

■ This does not preclude plaintiffs' recovery of damages for the decedent's emotional distress or injury during a period in which he may have suffered conscious, pre-impact fright and terror. Those damages are still available as an element of pain and suffering and are calculable in the ordinary manner. Nonetheless, Mr. Smith's testimony clearly does not purport to assist the factfinder in determining emotional distress or injury. To the extent plaintiffs seek to recover damages for the loss of enjoyment of life, those damages are not available under the MWDA on the facts of this case. To the extent the parties dispute over the admissibility of Stan V. Smith's expert testimony regarding hedonic damages, that issue is moot.

### B. Smith's Expert Testimony

In its motion to exclude Stan V. Smith's expert testimony,[10] the Government challenges Mr. Smith's methodology as to both its reliability and usefulness under the two part test announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At the time of the hearing, Plaintiffs had not responded to this motion and were directed to do so in their supplemental brief. Particularly, the Court directed the parties to consider *Kurncz v. Honda North America, Inc.,* 166 F.R.D. 386 (W.D.Mich.1996), in which Chief Judge Enslen, applying the *Daubert* test, evaluated and rejected Stan V. Smith's proposed expert testimony utilizing the "willingness-to-pay" model as unreliable, unhelpful, and inadmissible under Fed.R.Evid. 702 and 403. In their supplemental brief, plaintiffs failed to discuss *Kurncz* and addressed *Daubert* only to suggest that expert testimony should not be barred prior to its presentation to the court. Plaintiffs' supplemental brief at 4, *citing Daubert,* 509 U.S. at 595–97, 113 S.Ct. at

---

turely-ended life but for the restrictive nature of the plaintiff's injury on his enjoyment or experience of life. These all were considered compensatory damages available under the FTCA.

8. *See* Mich. S.J.I.2d § 50.02 ("denial of social pleasure and enjoyments" included as element of pain and suffering).

9. Such damages might be available where, for example, the passengers of an airplane survived

a crash for a period of time in which their activities were limited in some material and quantifiable manner prior to death.

10. Entitled: "Motion to Preclude Expert Testimony Using the 'Willingnessto–Pay' Model Related to Individual Claims for Non–Economic Damages by the Survivors of Albert Brereton" (D.E.# 57).

2798.[11] Not only is plaintiffs' presentation inadequate, it is completely unpersuasive.

■ Plaintiffs seek to admit Mr. Smith's testimony to assist the factfinder in placing a value upon the survivors' loss of society and companionship caused by the death of Albert Brereton. Mr. Smith has calculated the value of Albert Brereton's life based upon his expected life-span, a statistical individual's willingness to pay for safety, to endure on-the-job safety risks, and the costs of government health and safety regulations. *See* Stan V. Smith letter to Robert G. Lewendowski, dated Dec. 19, 1996; Government's supplemental brief at exh. A. Mr. Smith asserts that this value of life—or the value of preserving the ability to live a normal life—"is also a measure of the value placed on the loss of relationship or society and companionship." *Id.* Thus, not only is the statistically-calculated value of life a measure of hedonic value to an individual, it also is an estimate of the value of that individual's relationship to his survivors. *Id.* at 3. I find, however, that even if one were to accept Mr. Smith's testimony as producing a scientifically reliable value of the decedent's life, the conclusion that this same figure provides a value of that person's relationship to his or her survivors is unfounded.

■ Under Michigan law, loss of society and companionship caused by wrongful death compensates survivors "for the destruction of family relationships that result[ ] when one family member dies." *McTaggart v. Lindsey,* 202 Mich.App. 612, 616, 509 N.W.2d 881 (1993), *citing Crystal v. Hubbard,* 414 Mich. 297, 326, 324 N.W.2d 869 (1982). "The only reasonable means of measuring the actual destruction caused is to assess the type of relationship the decedent had with the claimant in terms of objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship." *McTaggart,* 202 Mich.App. at 616, 509 N.W.2d 881, *citing In re Claim of Carr,* 189 Mich.App. 234, 239, 471 N.W.2d 637 (1991). Mr. Smith's testimony is irrelevant and unhelpful in making this assessment. The intrinsic value of the decedent's life is an unfit measure of the value of his relationship with the surviving plaintiffs; it is like comparing apples to oranges. To make that valuation the factfinder will need to consider the characteristics of the relationship, not the value society might place on the safety and health of a statistically average individual. Therefore, Mr. Smith's testimony is inadmissible under Fed.R.Evid. 403 as irrelevant.

■ Even if the proposed expert testimony was not patently irrelevant, this Court would recommend exclusion of such evidence as unreliable and irrelevant under the *Daubert* analysis. In its supplemental brief, the Government has presented an exceptionally well-conceived and persuasive argument that Mr. Smith's testimony fails to satisfy the *Daubert* two-step test. Moreover, *Kurncz* is precisely on point in examining and rejecting Mr. Smith's expert opinion.[12] Plaintiffs' failure to address this issue leaves both the Government's argument and Judge Enslen's opinion unchallenged, and upon careful consideration I find these sources compelling. Therefore, this Court adopts the Government's brief as its own reasoning on this issue and for the reasons stated therein, Mr. Smith's testimony is found to be unreliable, irrelevant, and unhelpful to the factfinder regarding the valuation of plaintiffs' damages for loss of society and companionship.

---

11. Plaintiffs' reliance upon *Daubert* is taken out of context and misrepresents the Supreme Court's decision. In the statement cited by plaintiffs, the court merely sought to assuage fears that its ruling would open the floodgates to expose juries to "absurd and irrational pseudo-scientific assertions." The court noted that the traditional and appropriate procedures of the adversary system would allow juries to properly evaluate "shaky *but admissible* evidence." 509 U.S. at 596, 113 S.Ct. at 2798 (emphasis added) This section of the court's opinion was dictum, following the court's prescribed evaluation and treatment of proposed scientific expert testimony to determine admissibility.

12. *See also Ayers v. Robinson,* 887 F.Supp. 1049, 1061–64 (N.D.Ill.1995) [rejecting, under *Daubert,* Mr. Smith's "willingness to pay" model as a basis for evaluating hedonic damages]; *Sullivan v. Gypsum Co.,* 862 F.Supp. 317, 320 (D.Kan. 1994) rejecting a claim for hedonic damages as not recoverable under Kansas law and alternatively, rejecting Stan V. Smith's testimony as being unreliable and inadmissible under *Daubert.*

### III. *Disposition*

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that both of the Government's motions to preclude expert testimony using the "willingness-to-pay" model (D.E. # # 49 and 57) be GRANTED. On the facts of this case, hedonic damages are unavailable under the Michigan Wrongful Death Act. Moreover, under Fed.R.Evid. 702 and 403, Stan V. Smith's testimony is both scientifically unreliable and irrelevant to the valuation of plaintiffs' damages for loss of society and companionship.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Further, either party may respond to another party's objections within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

June 3, 1997.