RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 04-1043/1686

FRONTIER INSURANCE COMPANY,

*Movant-Appellant,*

*v.*

DONALD BLATY, Personal Representative of the
Estate of Melva Dee Parrott, deceased,

*Plaintiff-Appellee,*

EAGLE VILLAGE, INC., a Michigan Corporation, and
SANDY MOORE,

*Defendants-Appellees.*

Nos. 04-1043/1630/1686

No. 04-1630

DONALD BLATY,

*Plaintiff-Appellant,*

*v.*

EAGLE VILLAGE, INC., a Michigan Corporation, and
SANDY MOORE,

*Defendants-Appellees,*

FRONTIER INSURANCE COMPANY,

*Movant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 00-00089—Richard A. Enslen, District Judge.

Argued: March 17, 2006

Decided and Filed: July 24, 2006

Before: MARTIN, NELSON, and COLE, Circuit Judges.

1

———————————

**COUNSEL**

———————————

**ARGUED:** Mark Granzotto, Royal Oak, Michigan, for Plaintiff. Edward N. Lynch, YOCKEY, YOCKEY & SCHLIEM, Farmington Hills, Michigan, for Defendants. Ashley W. Ward, STITES & HARBISON, Lexington, Kentucky, for Movant. **ON BRIEF:** Mark Granzotto, Royal Oak, Michigan, for Plaintiff. John A. Klarr, YOCKEY, YOCKEY & SCHLIEM, Farmington Hills, Michigan, for Defendants. Ashley W. Ward, STITES & HARBISON, Lexington, Kentucky, Michael D. Wade, GARAN, LUCOW & MILLER, Grand Rapids, Michigan, for Movant.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge. This case is a civil action brought by the estate of Melva Dee Parrott (represented by Donald Blaty) against Eagle Village, Inc. and its employee, Sandy Moore. Parrott died at the age of thirteen months while in the care of Moore at Eagle Village. Blaty brings a number of causes of action against Eagle Village and Moore, including a violation of 42 U.S.C. § 1983. The district court entered default judgment against Eagle Village and Moore based on the failure of their insurance company, Frontier Insurance, to appear at a number of pre-trial meetings.

Frontier appeals the district court's entry of default against Eagle Village and Moore. The second appeal in this case is brought by Blaty, appealing the damages granted by the district court to the estate after the entry of default. Based upon the discussion below, this Court AFFIRMS the district court's decision in both of the appeals.

I.

Melva Dee Parrott was born on May 4, 1998. On April 23, 1999, Parrott and her three siblings were removed from their parents' home and placed in the custody of Eagle Village, Inc., a private foster care agency under contract with the State of Michigan. Eagle Village placed Parrott in the custody of Sandy Moore. While in Moore's custody, Parrott allegedly died of bronchitis on June 29, 2000.

The civil action underlying these appeals was filed by Donald Blaty, the court-appointed representative of the Estate of Melva Dee Parrott on August 1, 2000, listing ten causes of action against Eagle Village and Sandy Moore, including Section 1983 claims against each defendant. Eagle Village had an insurance policy with Frontier Insurance Company, covering itself and Sandy Moore against such an action. On October 15, 2001, Frontier Insurance was placed on rehabilitation[1] by the New York Supreme Court. Additionally as part of the rehabilitation order, the New York court ordered that parties to all actions in which Frontier is obligated to defend a party

———————————

[1]"Rehabilitation is directed toward preservation of an insurance company threatened with insolvency." *Bender's New York Insurance Law* § 16.04(1) (2005).

  A rehabilitation order directs the Superintendent [of Insurance for the State of New York], among other things, (1) to immediately take possession of the insurer's property; (2) to conduct the insurer's business; and (3) to take such steps as the court shall direct to remove the causes and conditions which have made the rehabilitation proceedings necessary.

§ 16.04(2)(a).

be enjoined from proceeding from designated litigation activities for six months. As a result, the case against Eagle Village and Sandy Moore was stayed for ten months. Based upon the parties' stipulation, the stay was lifted on August 22, 2002. Frontier now states, however, that the New York court went beyond merely staying the proceedings and held that Blaty was "enjoined and restrained from obtaining preferences, judgments . . . or making any levy against Frontier's assets or any part thereof."

On May 21, 2003, a court-ordered settlement conference was held and attended by a Frontier representative with authority to offer up to a $20,000 settlement. On June 5, the magistrate ordered that the settlement conference be continued on June 19. In that order, the magistrate stated that "a representative of the insurer shall also be present. Failure of counsel to be accompanied by an appropriate client representative with actual authority to settle may result in the imposition of sanctions or a citation for contempt of court."

Raj Mehta, counsel for Frontier Insurance Company in this action, claims to have never received the June 5 order. John Klarr, counsel for Eagle Village and Sandy Moore, states that he notified Mehta of the June 19 conference by faxing him a copy of a letter addressed to Magistrate Carmody along with a copy of the June 5 order. While Mehta claims he never received the fax, Klarr has been able to produce the fax cover sheet. Mehta states in his affidavit that he had conversations with Klarr regarding whether he needed to attend the June 19 conference and he was advised by Klarr to not attend because he was not authorized by Frontier to offer a settlement in the range requested by the magistrate.

Additionally, at some time between June 5 and June 10, Magistrate Carmody had a telephone conversation with Mehta in which Magistrate Carmody told him that "it was imperative that someone with authority to engage in meaningful settlement discussions attend the settlement conference." Mehta states in his affidavit that he remembers the conversation with Magistrate Carmody differently, stating that she "preferred" a representative from Frontier be there but that she never directed him to send one. Finally, Eagle Village's Chairman of the Board and private counsel, Jonathan Lauderbach, faxed Mehta a letter on June 18 expressing his frustration at Frontier's lack of desire to participate in the proceedings, warning Mehta of the possibility of default, and pleading with him that "it was *absolutely essential* that a representative of Frontier having actual authority to settle the case be present for the continuation of the settlement conference tomorrow, June 19, 2003." (emphasis in original).

No Frontier representative attended the settlement conference on June 19. As a result, plaintiff moved on June 30 for a default entry against Eagle Village and Sandy Moore and to strike their pleadings pursuant to Federal Rules of Civil Procedure 16 and 37. Magistrate Carmody ordered Frontier to appear and show cause on July 2 why default should not be entered against the defendants for the failure of Frontier, as the insurer of the defendants, to appear and participate at the pre-trial and settlement conference. Frontier failed to make an appearance at the show cause hearing. Mehta stated that he was advised by Klarr that Frontier did not need to make an appearance at the hearing and that he made himself available for a telephone conference on that day, but was never contacted by Magistrate Carmody or Klarr. On July 16, the magistrate issued a Report and Recommendation recommending that default be entered against the defendants with the liability not to exceed the $2 million coverage provided by Frontier. At the end of the Report and Recommendation, there was a provision stating that any objections to the report and recommendation must be filed within ten days and failure to do so would waive the right to appeal the district court's order. No objections were filed and on August 18 the district court adopted the magistrate's recommendation with the issue of damages and final judgment to be addressed later.

On September 8, Frontier filed a motion with the district court requesting that the court grant a limited appearance for Frontier in order to seek relief from the entry of default. In its

accompanying Rule 60(b) motion, Frontier relied on the New York Supreme Court's injunction. According to Frontier's brief in this matter, this injunction continues to be in effect up to the date of the filing of their brief (May 16, 2005). Magistrate Carmody issued a Report and Recommendation on October 28, 2003 that a non-party could not raise a Rule 60(b) motion but even if it could, relief was not appropriate in this case. Frontier objected to the October 28 report based on Magistrate Carmody's failure to address the appropriate provisions of Rule 60 and the Full Faith and Credit Clause of the Constitution, U.S. CONST. art. IV, § 1. On December 5, the district court denied Frontier's objections and adopted the magistrate's recommendation. On December 30, Frontier filed the first of its two appeals to this Court.

The district court issued an opinion on February 18, 2004 entering a default judgment and awarding $100,000 for pain and suffering plus funeral expenses and litigation costs to the estate of Melva Dee Parrott. On April 12, the district court denied Blaty's motion for reconsideration of the denial of damages based on Parrott's "loss of the enjoyment of life." Blaty appealed the district court's decision to this Court on May 10. Frontier filed its second appeal to this Court on May 24, repeating the issues in its December 30, 2003 appeal and adding the issues of the original default entry of August 18, 2003 and the subsequent default judgment by the district court.

## II.

In this opinion, we first address Frontier's appeals on the issues of: 1) the entry of default, 2) the denial of a "limited appearance," and 3) the denial of the Rule 60(b) motion. In Part III, we will address the appeal raised by Blaty to the amount of damages granted by the district court.

### A. Entry of Default

Frontier has submitted that it is appealing both the district court's order of a default judgment and the denial of its Rule 60(b) motion. Typically, once there is a default judgment in a case, a subsequently filed appeal of failure to set aside the entry of default cannot be heard. In this case, Frontier filed two timely appeals. The first, filed before judgment, appeals the failure to set aside the default entry under Rule 55(c). The second, filed after judgment, appeals the entry of default judgment.

An appeal from a default judgment is actually an appeal of the denial of a Rule 60(b) motion, through which a party seeks relief from the default judgment. We, therefore, construe Frontier's first grounds for appeal as an appeal of the original default *entry* under Rule 55(c) by the district court, thereby distinguishing it from their third grounds for appeal of the denial of the Rule 60(b) motion. Frontier may not appeal the *entry* of default but it may appeal the failure by the district court to *set aside* the default entry according to Rule 55(c). *See O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 352 (6th Cir. 2003); *see also* FED. R. CIV. P. 55(c) ("For good cause shown the court may set aside an entry of default."). That decision is reviewed by this Court for abuse of discretion. *O.J. Distributing*, 340 F.3d at 352.

First, as a point of clarification

it is important to distinguish between an entry of default and a default judgment. That is, a stricter standard of review applies for setting aside a default once it has ripened into a judgment. Specifically, once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation as reflected in Rule 60(b).

*Id*. at 353 (citations and internal quotation marks omitted). In this case, we address Frontier's appeal at both stages of default.

Blaty objects to this appeal, stating that Frontier waived its right to appeal the entry of default because it did not timely file objections to the magistrate's report and recommendation. In the report of July 16, 2003, the magistrate states

> OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

Frontier did not file an objection to the default entry within ten days of the magistrate's report and recommendation.

Frontier's response to the waiver argument is that it was not a party to the suit at the time of the July 16 report. However, the mere fact that it was not an official party at the time does not excuse Frontier's inaction because Rule 24 allows for intervention in limited cases. *See* FED. R. CIV. P. 24. Frontier could have raised an objection (as they did with the magistrate's later report) and requested the court to allow them a limited appearance or the opportunity to intervene in the action. Therefore, Frontier's silence constitutes a waiver of the right to appeal the entry of default.

### B. Limited Appearance

Frontier has appealed the district court's decision to deny it a limited appearance in order to request relief from the entry of default. However, we need not consider this argument because the magistrate considered Frontier's Rule 60(b) motion and its merits in full and ruled on that motion, thereby leaving Frontier no worse off than if its motion for a limited appearance had been granted. This appeal is therefore moot.

### C. Rule 60(b) Motion

Frontier also appeals the district court's denial of its Rule 60(b) motion to grant relief from the default judgment.[2] This Court reviews the district court's decision on a Rule 60(b) motion for abuse of discretion. *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006).

#### 1. Waiver

Before reaching the merits of the claim, there is a preliminary question of whether aspects of this appeal have been waived. In a clause identical to the one discussed *supra* in section II-A, Magistrate Carmody's report on Frontier's Rule 60(b) motion of October 28, 2003 stated that a failure to object to the report resulted in a waiver of an appeal of the district court's resulting order. In contrast to its inaction in the face of the magistrate's earlier report, Frontier did file a number of objections to Magistrate Carmody's October 28 report. Those objections were subsequently rejected

---

[2]Rule 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b).

in the district court's order.  Blaty argues that because of the waiver clause, a failure to object to a *specific* issue within the magistrate's report results in a waiver of an appeal on that individual issue. *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("By operation of this supervisory rule, only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.").

As a result of *Smith*, Frontier is barred in this case from raising a number of objections for the first time at the appellate level.  The only remaining appellate issues are the three objections Frontier raised to the magistrate's report: 1) full faith and credit to the New York state orders require relief from the default judgment, 2) Rule 60(b)(6) requires relief in this case, and 3) the court improperly denied the insurer an opportunity to seek relief from a default when a judgment on the default would be enforceable only out of insurance proceeds.  Therefore, we will address solely these three issues raised to the district court by the Rule 60(b) motion.  The remaining issues are waived based upon *Smith*, 829 F.2d at 1373, and we decline to address those issues.

### 2. Full Faith and Credit

A New York court has issued at least three orders designed to protect Frontier's assets where a civil action is pending in which Frontier is obligated to defend a party.  As a result of those orders, this action was originally delayed ten months, four months beyond the six requested in the first order from the New York court.  However, subsequent orders have indefinitely enjoined defaults against Frontier's insureds.

The Full Faith and Credit Clause states "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.  And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."  U.S. CONST. art. IV, § 1.  "[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . .from which they are taken."  28 U.S.C. § 1738.  The Supreme Court has held that a federal court must abide by a state's judicial proceeding so far as that judicial proceeding and the body who delivered have jurisdiction over the parties involved.  *See W. Union Tel. Co. v. Commonwealth of Pennslyvania*, 368 U.S. 71, 75 (1961) ("[A] state court judgment need not be given full faith and credit . . . as to parties or property not subject to the jurisdiction of the court that rendered it.").

Applying *Western Union* to this situation, we find no error.  The parties in this case are all residents of Michigan.  While the insurance company of the defendants, Eagle Village and Moore, is located in New York, that would not bring the defendants in this case under the jurisdiction of the New York courts.  Because the New York court did not have jurisdiction over Eagle Village and Moore, they were not subject to the injunction, and the Full Faith and Credit clause did not require the district court to stay the proceedings in this case pursuant to the injunction.  Therefore, Frontier's appeal based on the Full Faith and Credit Clause must fail.  *See Western Union Tel. Co.*, 368 U.S. at 75.

### 3. Relief based on Rule 60(b)(6)

Frontier argues that it deserves relief under Rule 60(b)(6)'s catch-all phrase, "any other reason justifying relief from the operation of the judgment."  This provision should only be applied in "unusual and extreme situations where principles of equity mandate relief." *Blue Diamond Coal Co. v. Tr. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).  Frontier specified in its Rule 60(b)(6) objection to the magistrate's report that it found the magistrate's

insistence on settlement negotiations as coercive and, therefore, its absence at those negotiations did not justify the default judgment.

Frontier's posture on this issue is the unenviable position of arguing that a magistrate should not encourage settlements. Given the abuse of discretion standard involved in our appellate review along with the high standard of Rule 60(b)(6) specifically, it is difficult for Frontier to demonstrate how equity demands relief in this situation. The district court held that "the Magistrate's attempts to continue settlement proceedings were neither unusual nor extreme" and we conclude the same. For these reasons, we reject Frontier's appeal based on Rule 60(b)(6).

### 4. "Draconian" Objection

Frontier's third and final objection to the magistrate's report of October 28, 2003 was that it was "draconian for a court to impose a default judgment against a party for the acts or omissions of a non-party insurer, enforceable only out of insurance proceeds, and then deny the non-party insurer the opportunity to seek relief from that default." The district court denied the objection because Frontier failed to cite any authority for the proposition and the court found it to be unpersuasive. Even so, as discussed *supra* in section II, the magistrate and the district court fully heard Frontier's Rule 60(b) motion and found it to be without merit. Therefore, Frontier was granted a limited appearance in effect and was, therefore, not denied the opportunity to seek relief. For this reason, Frontier's appeal must fail.

What ultimately dooms Frontier's appeal based on its excuse for not attending the settlement conference and the show cause hearing is that the only proof it has that its conduct was excusable is Mehta's word. That proof goes against the word of the magistrate, the word of the attorney for Eagle Village and Moore, and documentation indicating that Mehta received numerous warnings about the importance of complying with the court's requests and the potential consequences. That is not enough to overcome the abuse of discretion standard of review. Therefore, this Court denies the Rule 60(b) appeal entirely.

### III.

The question of whether Parrott's estate is entitled to damages based on her loss of enjoyment of life is a legal one, which we review *de novo*. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 794 (6th Cir. 2005). The estate brings this action under 42 U.S.C. § 1983. In that statute, there is no guidance for how to evaluate damages. However, if section 1983 is

> deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

42 U.S.C. § 1988. It is undisputed that Michigan law is controlling in this instance and, therefore, we must apply Michigan's civil damages laws to this action.

Under Michigan's wrongful death statute,

> the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the

period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

MICH. COMP. LAWS § 600.2922(6). Although this list does not specifically include the deceased's loss of enjoyment of life, Blaty argues that is not the end of the inquiry into this aspect of damages.

First, Blaty states that the Michigan statute is not designed as a list of all the damages in a wrongful death suit, but merely acts as an advisory list. In support of this argument, he points to the language, "the court or jury *may* award damages as the court or jury consider fair and equitable, under all of the circumstances," suggesting that the list following is suggestive, not comprehensive. *Id.* (emphasis added). We turn to Michigan court decisions to determine whether this argument would be successful there.

In Michigan, "[t]here is no common-law right to recover damages for a wrongully caused death." *Jenkins v. Patel*, 684 N.W.2d 346, 350 (Mich. 2004). As a statute in derogation of the common law, the wrongful death act "must be narrowly construed so that only those damages explicitly provided for in the act are recoverable." *Brereton v. United States*, 973 F. Supp. 752, 755 (E.D. Mich. 1997); *Kemp v. Pfizer, Inc.*, 947 F. Supp. 1139, 1145 (E.D. Mich. 1996).

The wrongful death act provides for three categories of damages: (1) "reasonable medical, hospital, funeral, and burial expenses for which the estate is liable," (2) "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death," and (3) "damages for the loss of financial support and the loss of the society and companionship of the deceased." MICH. COMP. LAWS § 600.2922(6). The first and third categories embrace only losses incurred by a decedent's estate or survivors; they do not authorize recovery for the decedent's enjoyment of life. The second category, however, addresses the decedent's own losses, and the term "pain and suffering" seems broad enough to cover hedonic injury. *See Brereton*, 973 F. Supp. at 754 (noting that Michigan law recognizes "denial of social pleasure and enjoyments" as an element of pain and suffering).

But a decedent's pain and suffering are compensable under the wrongful death act only if they were experienced consciously "between the time of injury and death." MICH COMP. LAWS § 600.2922(6); *see Brereton*, 973 F. Supp. at 757. If hedonic damages are recoverable, therefore, they are recoverable only to the extent that the decedent experienced a loss of enjoyment of life before dying. *See Brereton*, 973 F. Supp. at 757. Loss of the enjoyment that would have been experienced but for the decedent's death is not compensable under the act. *See id.* ("To the extent that plaintiffs seek damages for [the decedent's] loss of enjoyment of life that would have been experienced but for his untimely demise, those damages are unavailable."); *Kemp*, 947 F. Supp. at 1146.

In *Chomic v. United States*, 377 F.3d 607 (6th Cir. 2004), *cert. denied*, 544 U.S. 948 (2005), this Court analyzed a case brought pursuant to federal law but where the measure of damages was controlled by Michigan law. We held that the Michigan wrongful death statute "'clearly provides not that death creates a cause of action, but that death does not extinguish an otherwise valid cause of action.'" *Id.* at 611 (citing *Hardy v. Maxheimer*, 416 N.W.2d 299, 307 n. 17 (Mich. 1987)). According to the Michigan Supreme Court, the focus of the act for the purpose of assessing damages is not on the actual death, rather "the proper focus is on the underlying wrong which caused the death." *Id.* (citing *Hardy*, 416 N.W.2d at 307. Further, Michigan's wrongful death statute "is a derivative one whereby the personal representative of the deceased stands in the latter's shoes." *Id.* (citing *Xu v. Gay*, 668 N.W.2d 166, 174 (Mich. App. 2003)). "Thus, '[t]he mere fact that [Michigan's] legislative scheme requires that suits for tortious conduct resulting in death be filtered through the so-called 'death act' . . . *does not change the character of such actions except to expand*

*the elements of damage available.'" Id.* (citing *Hawkins v. Reg'l Med. Labs.*, 329 N.W.2d 729, 735 (Mich. 1982)) (emphasis added).

This case is distinguishable from *Chomic*. In that case, we addressed the question of when a wrongful death action accrues in relation to its underlying injury. Additionally, both *Hardy* and *Hawkins*, which were cited in *Chomic*, deal with that same issue. None of these cases dealt with the ultimate issue in this case – whether the event of death can, in and of itself, create the right to loss of enjoyment of life damages. For the reasons discussed earlier, it cannot. Hedonic or loss of enjoyment of life damages are only available to a plaintiff still living, in order to compensate that individual for aspects of their life they may no longer enjoy due to the tortious actions of another. That is why, in this case, the death did not change the character of the action, as instructed by this Court in *Chomic* and the Michigan Supreme Court in *Hawkins*. *See Chomic*, 377 F.3d at 611 (citing *Hawkins*, 329 N.W.2d at 735). Therefore, any hedonic damages needed to be assessed at the moment before death occurred and not by considering death as the ultimate loss of enjoyment of life. That would expand Michigan's wrongful death statute beyond the precedent of the Michigan courts and the intent of the Michigan legislature. Therefore, the district court was correct in denying such damages to Parrott's estate.

Finally, Blaty argues that the district court was required to consider whether 42 U.S.C § 1988's catch-all provision requires the availability of damages for the loss of enjoyment of life. The limitations on wrongful death damages under Michigan law must yield if the unavailability of damages for post-death hedonic losses is inconsistent with "the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *see Robertson v. Wegman*, 436 U.S. 584, 588 (1978). Like the only other panel of this court to have addressed the issue, *see Tinch v. City of Dayton*, Nos. 94-3436/3516, 1996 WL 77445, at **2-3 (6th Cir. Feb. 20, 1996), *cert. denied*, 519 U.S. 862 (1996), we hold that federal law does not require, in a section 1983 action, recovery of hedonic damages stemming from a person's death.

"In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at the policies expressed in them." *Robertson*, 436 U.S. at 590 (internal quotation marks and alteration omitted). The policies underlying § 1983 include both (1) compensation of persons for injuries caused by deprivations of their federal rights and (2) deterrance of deprivation of rights. *See Robertson*, 436 U.S. at 590-91; *Cary v. Piphus*, 435 U.S. 247, 254-57 (1978). The policy of deterrence "operates through the mechanism of damages that are compensatory – damages grounded in determinations of plaintiffs' actual losses." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *see id.* at 310 ("Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations."). Thus, "the basic purpose of the § 1983 damages" is to compensate injured persons for their actual harm. *Id.* at 307 (internal quotation marks omitted).

Michigan's wrongful death act is consistent with the compensatory purpose of section 1983 identified by the Supreme Court. The act authorizes compensation for losses, including hedonic losses, that are experienced by the decedent before death. There is no requirement under federal law that a state go further than this in providing damages for wrongful death. The loss of enjoyment caused by death is not "actual," in the sense that is relevant here, because it is not consciously experienced by the decedent. *See Tinch*, 1996 WL 77445, at **3 ("the actual harm suffered by the decedent" does not include the loss of enjoyment of life rendered unavailable by death). There being no means of making the decedent whole, recovery of damages for this (or any other) post-death loss is not required to advance would not advance section 1983's compensatory policy. *See Robertson*, 436 U.S. at 592 ("The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate").

To the extent that damages stemming from the death itself might be needed to fulfill the deterrent purpose of section 1983 (there being no compensation from the death as such), we see no reason to think that damages for injuries suffered by the decedent's survivors and hedonic damages suffered before death would not be sufficient in most cases. Michigan's wrongful death act, to repeat, authorizes an award of damages for survivors' losses of support, society, and companionship. The fact that such damages were not awarded in the unusual circumstances of this case does not render the act ineffective as a deterrent. *Cf. Robertson*, 436 U.S. at 592 ("[G]iven that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality.")

In *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990), the Tenth Circuit had the opportunity to examine Oklahoma's wrongful death statute in light of sections 1983 and 1988. It applied "the principles set out in § 1988 for borrowing law from another source" and held that "the Oklahoma survival action alone does not meet the stated criteria." because the Oklahoma statute, if applied, would "provide [an] extraordinarily limited recovery." *Id.* at 1504.

The Tenth Circuit concluded that "federal courts must fashion a remedy to be applied to § 1983 death cases." *Id.* at 1506. The remedy "must make available to plaintiffs sufficient damages to serve the deterrent function central to the purpose of § 1983." *Id.* at 1507. The Tenth Circuit cited to the Supreme Court of the United States for the proposition that, in section 1983 actions, "the level of damages is ordinarily determined accordingly [sic] to principles derived from the common law of torts. . . . [D]amages in tort cases are designed to provide 'compensation for the injury caused to the plaintiff by the defendant's breach of duty.'" *Id.* at 1509 (quoting *Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–07 (1986)). The Tenth Circuit concluded that, in a section 1983 wrongful death suit, the "appropriate compensatory damages would include medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions."[3] *Id.*

Likewise, the Eighth Circuit has adopted this approach in considering appropriate damages available in a section 1983 wrongful death action. The Eighth Circuit adopted the Tenth Circuit's view that the measure of recovery in a § 1983 death cases should not be placed "into the hands of the state." *Andrews v. Neer*, 253 F.3d 1052, 1063–64 (8th Cir. 2001) (citing *Berry*, 900 F.2d at 1506). The borrowing of "the damages available in the wrongful death statute would be 'inconsistent with the predominance of the federal interest,' and therefore would fail to satisfy the § 1988 criteria for borrowing state law." *Id.* at 1063 (citations omitted).

This Court has had two opportunities to review a similar issue. We held that Ohio's wrongful death statute was not sufficient for purposes of sections 1983 and 1988 in *Jaco v. Bloechle*,

---

[3] It should be noted that the Tenth Circuit in *Berry* concluded its discussion of this issue by critiquing the wide variety between the wrongful death actions of different states. "For instance, some states may preclude, or limit, recovery for pain and suffering or for punitive damages. In addition, some state laws may deny all recovery in particular circumstances, as when wrongful death actions must be for dependents and there are none." *Id.* at 1506. As a result, the court held that "[t]he laws are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim; they are deficient in some respects to punish the offenses. Application of state law, at least in some instances, will be inconsistent with the predominance of the federal interest." *Id.*

We disagree with this portion of the Tenth Circuit's reasoning to the extent it stands for the proposition that variance in state law remedies may make all state remedies in that area inadequate under section 1988. Section 1988(a) is clear. In the absence of suitable federal remedies, we must apply "the common law, as modified and changed by the constitution and statutes of the [forum] State . . . so far as the same is not inconsistent with the Constitution and the laws of the United States." This language provides no warrant for the creation of federal common law on the theory that the law of states other than the forum state might be inconsistent with federal interests. We must look to Michigan law only and if Michigan law is not inconsistent with the Constitution and our federal laws, then section 1988(a) mandates its application.

739 F.2d 239, 243 (6th Cir. 1984) (Because Ohio's wrongful death statute "is not adapted to the object of providing for the continuation of personal causes of action, the wrongful death statute is irrelevant to the § 1988 analysis imposed on this action." (citation omitted)). Further, this Court held that applying Ohio's wrongful death statute would be inconsistent with the policy underlying section 1983 actions — compensation for injury and "§ 1983's role in preventing official illegality" — because it would prevent recovery. *Id* at 243–44 (citation omitted). However, in the unpublished opinion discussed earlier, this Court has held that the application of the Ohio wrongful death statute in a case where the victim was killed by the police and granted compensation damages of $25,000 was acceptable and not inconsistent with the Constitution and the laws of the United States. *See Tinch*, 1996 WL 77445, at \*\*1-3.

Given this precedent, we must now decide whether the application of the Michigan wrongful death statute in this case was acceptable and not inconsistent with the Constitution and the laws of the United States or, in the alternative, to apply the federal wrongful death cause of action developed in *Berry*, *Andrews*, and *Jaco*. Section 1983's purpose is to both compensate the victims and "provide special deterrence for civil rights violations." *Berry*, 900 F.2d at 1503. Any section 1983 remedy, whether based on a state remedy system or a federal one, should fulfill those goals, or the remedy would be inconsistent with federal laws. However, when evaluating a remedy for such compliance, the Supreme Court has ruled that the deterrence aspect of section 1983 operates through compensation of the actual damages suffered by the victim. *See Carey v. Piphus*, 435 U.S. 247, 256-57 (1978) ("To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages.")

We find it highly relevant that in *Jaco* before this Court, the state remedies provided *no recovery at all*. As a result, we held that the Ohio remedy was inconsistent with the Constitution and laws of the United States and set that remedy aside, pursuant to section 1988. We believe section 1988's instruction to set aside a state remedy should only be used where it provides no meaningful deterrence, such as when that remedy provides no recovery for an otherwise valid plaintiff. This Court should not disturb a state remedy unless it is clear that such remedy is wholly inconsistent with the Constitution and the goals of section 1983.

Although the district court did not explicitly state that following state law in assessing the damages in this case did not conflict with the Constitution and federal law, we believe it may go unspoken that any decision by an Article III judge is made with conscious attention paid to ensure that the decision does not violate the United States Constitution and federal law. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 589 (2002).

As a federal court applying a state law remedy, this Court's hands are tied to some degree in scrutinizing the types of available damages. Although we might be inclined to think that it would be a better policy decision to make available damages for the loss of enjoyment of life in a wrongful death suit, or that such damages might further advance the objectives of federal law, section 1988 only allows us to modify the state damages scheme if it is *inconsistent* with federal law. Given Congress's choice to incorporate state law damage provisions for section 1983 cases – and to only provide additional damages when state remedies are entirely insufficient with the policies of compensation and deterrence – we do not have the discretion to hold that damages beyond those made available by the state should be allowed simply by deciding that such a remedy would be preferable. The only basis to supplement the state law damages scheme is a determination that it is inconsistent with the purposes of federal law, and we see no basis for making such a determination here.

The typical recovery in Michigan wrongful death suits for damages such as the ones being sought by Blaty in this case is loss of society and companionship damages from the perspective of those who survive the deceased. Because of the unique circumstances of Parrott's death, the district court held these damages amounted to zero. While this result does not seem wholly fair to Parrott's estate, it is the result dictated by current Michigan law. At the same time, the outlier of facts that this case presents does not necessitate that federal law must trump the Michigan law as being inconsistent with the Constitution and the laws of the United States.

## IV.

Based on the discussion above, we AFFIRM all of the district court's decisions on appeal in this case.